# BANK OF THE STATE OF ALABAMA v. CROFT.

1 Where one acquires the possession of slaves under a contract with the owner to pay an equivalent for their services, and restore them to him at the end of the year, a renewal of this contract from year to year, thus continuing the possession of the hirer, without interruption for more than three consecutive years, is not a loan, &c. within the second section of the statute of frauds, so as to subject the slaves to his debts.

WRIT of error to the Circuit Court of Marengo.

This was a proceeding under the statute, for the trial of the right of property. An issue was made up under the direction of the court, and submitted to the jury for trial. From a bill of exceptions, sealed at the instance of the plaintiff, it appears that the plaintiff caused a writ of *fieri facias*, to be placed in the hands of the sheriff of Marengo, against the goods and chattels, &c., of President W. Pearson and Bird M. Pearson, which, on the 22d of November, 1843, was levied on two slaves, viz: Mary and Elsey, as the property of Bird M., and while they were on his plantation. These slaves were claimed by the defendant in error, and a bond executed by him as required by law.

It was proved that the claimant, in 1837, in the State of South Carolina, hired the slaves in question privately to Bird M., for the year 1838; and that they were brought from that State to the plantation of the latter, in Marengo county; and remained in his possession from about the first of January, 1838, to the time they were levied on. The possession of Bird M. was under a contract of hiring, made privately, at his house in Marengo, with the claimant, from year to year. Upon this evidence, the court charged the jury, that if they believed, from the testimony, that the hiring from year to year, by Croft to Pearson, was *bona fide*, and upon good consideration, although there was no actual change of possession for three years or more from Pearson to Croft, that the case did not come within the statute of frauds, and that they should find for the claimant. The jury returned a verdict for the claimant, and a judgment was rendered accordingly.

W. M. Smith, (of Marengo,) for the plaintiff in error, cited Myers v. Peek's adm'rs, 2 Ala Rep. 648; Oden v. Stubblefield, id. 684. See also 4 id. 40.

F. S. Lyon, for the defendant, insisted, that the statute of frauds did not apply to a transaction *bona fide*, and founded upon a valuable consideration; and that the cases cited, did not warrant a different conclusion.

COLLIER, C. J.—In the cases cited by the plaintiff's counsel, we took an extended view of that part of the second section of the statute of frauds, which declares the effect of a three years' continuous possession of goods and chattels under a loan, or where there is a reservation or limitation, &c.; and such loan, reservation, limitation, &c., is not declared by will, &c. It is needless to reiterate either the reasoning or the conclusions of the court in those cases. They were essentially different in their facts, and controlled by a provision of the statute from which the present case is expressly exempted. In all of them, the possession of the property in question had been parted with under circumstances, that showed that there had been a gift, or the absence of a contract founded on a valuable consideration.

In Oden v. Stubblefield, [4 Ala. Rep. 40,] it appears that the slave was in possession of the donee, at the time the deed of gift, reserving a life estate to the donor, was executed. This deed was never recorded. The donor brought an action of detinue against a purchaser from the donee to recover the possession of the slave. Previous to the execution of the deed, the donee hired the slave to a third person at ten dollars a month, and upon the donor's complaining that this was not enough, the donee agreed to pay him two dollars more. Assuming the possession of the donee to have commenced, either under a loan, or a gift with a reservation, we said, "As it respects creditors and purchasers, the actual payment of hire by the donee could not have interrupted the continuity of his possession, and in their favor, if it continued for three years *without demand made and pursued by due course of law*, it would divest the reservation which the plaintiff had made in his own favor." This case is unlike the one at bar; for there, the possession was parted with without any thing, either paid or agreed to be paid—the promise, if it can be so considered, to

pay the donor hire, was a subsequent undertaking, after the statute had began to operate. The statute itself prescribes the terms on which a reservation, &c., shall be preserved as against the creditors, or purchasers from the donee, and a *post factum* arrangement by which hire, or something as an equivalent therefor, is to be paid, cannot have that effect. This can only be done either by reclaiming the possession, or prosecuting a suit with a view to that object; or where the reservation, &c., is shown by deed, &c., causing the same to be recorded upon proof thereof.

The facts of the present case bring it within the third section of the statute, which declares that, "This act shall not extend to any estate or interest in any lands, goods or chattels, or any rents-common, or profit out of the same, which shall be upon good consideration, *bona fide* lawfully conveyed, or assured, to any person or persons, bodies politic, or corporate." [Clay's Digest, 255.] If it be true, as shown by the evidence, that the slaves were hired by the claimant to one of the defendants in execution, from year to year, whether privately or publicly, the case is exempted from the influence of the statute; for then, the possession was parted with for a *valuable* consideration, which has been often held to be the meaning of the terms, "good consideration," as used in the act. This being shown, the inference will be, in the absence of all proof impugning the fairness of the transaction, that it was *"bona fide."* And the possession, having been acquired and retained by the hirer under a contract made annually to pay to the claimant an equivalent therefor, with a stipulation that, at the termination of the hiring, he would restore the slaves to the claimant, the creditors of the former could not divest the title of the latter, by a sale under an execution against the hirer. From this view, it results that the circuit court laid down the law correctly; and its judgment is, consequently, affirmed.