|   7   | 379 |
|-------|-----|
|  113  | 575 |

# JOHNSTON v. THE BRANCH BANK AT MONT-GOMERY.

1. When a slave remains in the possession of a person other than [the owner, for more than three consecutive years, under a contract for hire, made publicly or privately, the case does not come within the second section of the statute frauds, so as to subject the slave to the payment of the debts of the person in possession.

2. The levy of an attachment on a slave to pay the debt of a person to whom she was hired, the interposition of a claim of property, and the execution of a bond pursuant to the statute, interrupts the continuity of the hirer's possession, and again restores the slave to the owner. And thus precludes the creditors from deriving any benefit from the previous possession of the hirer, (which was short of three years,) if it were possible for such possession, when·added to that sub-sequently acquired, to avail anything.

3. Where the fair inference from the proof offered, is, that its only effect, (if any,) was to show that a transaction between the parties, disconnected with that before the Court, was fraudulent, it should not be permitted to go to the jury. It is not permissible to give evidence of one fraud, that it may be inferred that the party was guilty of another, with which he is charged.

Writ of error to the Circuit Court of Montgomery.

On the third day of April, 1843, a writ of *fieri facias* at the suit of the defendant in error, was issued against the goods and chattels, &c. of Charles Mervine, requiring to be made the sum of nine hundred and seventy-five 50-100 dollars, besides costs. This writ was levied on a negro woman named Mary, and her child Isabella, as the property of the defendant in execution. The plaintiff in error interposed a claim to these slaves, by making an affidavit and entering into bond, with surety, as provided by statute.

An issue was made up and submitted to a jury, to try whether the slaves were subject to the execution. On the trial, a bill of exceptions was sealed at the instance of the claimant, which, so far as material, may be thus briefly recited. The execution was levied on the slaves in question, on the 15th of April, 1843, who were then in the possession of the defendant

in execution. It was shown by evidence, that the claimant purchased the woman, Mary, on the 1st February, 1840, and on the same day sent her to the defendant's house, to wait on his (defendant's) wife, who was claimant's sister, and then sick. The parties all resided at the time, in the city of Montgomery, though not at the same house. Up to June, 1840, the woman washed, &c., for the claimant, but lived in defendant's family, cooking and waiting on them, also. In the month and year last above stated, the claimant left the woman in Mervine's possession, with directions to take good care of her, until his return from Georgia, which, it was supposed, would be in the succeeding fall. The claimant did not return at the expected time, but has remained in Georgia ever since his departure from Montgomery.

An attachment ancillary to the suit, consummated by the judgment on which the execution in the present case issued, was issued about the 1st of March, 1842, and on that day levied on the woman Mary, and her child Isabella, (who was born the 27th January preceding.) The slaves were confined in jail under the process. The claimant being advised thereof, came immediately to Montgomery, interposed a claim, in due form, and executed a mortgage to his surety in the claim bond, on the woman and her child, for his indemnity. But this evidence, as to the claim and mortgage, were objected to by the plaintiff in execution, and rejected.

The evidence of the defendant and wife showed, that on the 16th of March, 1843, Mary was hired to the former by the claimant, at the rate of $100 *per annum*, and under this hiring remained in the defendant's possession, up to the levy of the execution.

The levy of the ancillary attachment was dismissed on the same day, but previous to the levy of the execution. Immediately thereafter, the claimant was advised of the proceeding, came from Georgia, and interposed the claim now in controversy.

It was also proved, that the defendant had paid nothing for hire, but there were unsettled accounts between himself and the claimant.

The plaintiff offered to prove that the defendant was in possession of a blacksmith shop, the business of which, above

all expenses, was worth about $1,000, which he sold about the 16th March, 1842, to the claimant; the latter agreeing to pay the defendant, as his agent, the sum of one thousand dollars, *per annum*, to attend to the shop. *Further*, that the plaintiff, between the 1st and 15th March, 1842, caused garnishments to be served on different persons indebted to the defendant, for work previously done in the shop. To this evidence the claimant objected, but his objection was overruled, and the evidence permitted to go to the jury.

Upon these facts the following points were ruled by the Court: 1. In order to prevent personal property from becoming liable to the debts of one who has been in possession of it under a contract of hiring, for three years, without demand made and pursued by due course of law, it must appear that the hiring was not only *bona fide*, but public and open to the world. 2. That the claim interposed in March, 1842, and the execution of the mortgage by the claimant for the indemnity of his surety, did not in any manner interrupt the continuity of the defendant's possession. 3. That all the proceedings consequent upon the levy of the attachment, did not amount to a demand made and pursued by due course of law, so as to prevent the operation of the act, which makes three years possession under a loan, effectual in favor of the creditors, &c. of the loanee.

The jury returned a verdict, in which they found the woman subject to the execution, &c., and that the child is the property of the claimant, and judgment was rendered accordingly.

T. WILLIAMS, for the plaintiff in error.

J. A. ELMORE, for the defendant in error.

COLLIER, C. J.—In the Bank of the State of Alabama v. Croft, 6 Ala. Rep. 622, we determined, that where a person acquires the possession of slaves under a contract with the owner to pay hire for their services, and restore them to him at the end of the year, a renewal of the contract from year to year, so as to continue the possession of the hirer without interruption, for more than three consecutive years, is not a loan, &c., within the second section of the statute of frauds. We say further, that whether the hiring is private or public,

the effect is the same, and shows that the possession is parted with for a valuable consideration, which has been often held to be the meaning of the terms, "good consideration," as used in the act.

No evidence was adduced to impugn the fairness of the contract of hiring, and no charge was given to the jury by which their inquiries were directed to that point; but the ruling of the Court assumed, that it was not only necessary that the transaction should have been *bona fide*—it should also have been public and open to the world. In saying that publicity was essential to protect the rights of the claimant, the case cited is conclusive, to show that the Circuit Court misapprehended the law.

We think it entirely clear, that the levy of the ancillary attachment in March, 1842, on the woman, her retention by the officer until the claim of property was interposed, interrupted the continuous possession of the defendant in execution. The levy placed her in the custody of the law, and when the bond was executed for the trial of the right, the claimant became her custodian. If he afterwards delivered her to the defendant, either upon a loan or for hire, the defendant's possession (if an important consideration) could only take date, so far as it concerns the statute of frauds, from the time of such second delivery. This conclusion seems to us so clear, as not to require illustration.

In respect to the evidence of the sale of the blacksmith shop, by the defendant to the claimant, the employment of the former by the latter as his agent, &c., we are unable to discover any ground upon which to rest its admissibility. It perhaps, was intended to show a fraudulent purpose, on the part of both the defendant and the claimant, and that the latter actually lent himself to the consummation of a fraud prejudicial to the plaintiff. Conceding, that the transaction developed by this evidence presents an unnatural and unfavorable exterior, and we cannot conceive how it can affect the claimant's right to the slave in question. It is wholly disconnected, so far as we can learn from the proof, with defendant's possession; and evidence of one fraud, will not warrant the conclusion that the party is guilty of another with which he is charged.

This evidence does not appear to have been offered for the purpose of laying the ground for a presumption, that the purchase money of the blacksmith shop was paid by the sale of the slave. If so, it was very insufficient to establish that conclusion. In every view in which it has presented itself to us, we think it was *prima facie* irrelevant, and should have been rejected.

The consequence is, that the judgment of the Circuit Court must be reversed, and the cause remanded.