## STUBBLEFIELD v. ODEN.

1. Where slaves are delivered, under a contract to pay hire, and return them at a time stipulated, a continuous possession for three years, without demand made and pursued by due course of law, will not subject them to the debts of the donee, under the second section of the statute of frauds; although there was no deed or writing recorded, which evidenced the transaction.

2. If during a permissive possession of slaves under a gratuitous bailment, of less than three years continuance, they return to the possession of the bailor without the agency of the bailee, and the latter again receive them upon an undertaking to return them to the bailor, his possession, within the second section of the statute of frauds, will again commence from the time of the second delivery.

Writ of Error to the Circuit Court of Talladega.

THIS was an action of *Detinue,* at the suit of the plaintiff in error, commenced in May, 1840, for the recovery of a negro woman named Sally, and her three children.    The cause was tried upon the  general issue ; and a  bill  of  exceptions was sealed  at the instance of the  plaintiff.    The  defendant claimed the slaves in question under a bill of sale from W. T. Stubblefield, executed on the 18th April, 1839 ; and the latter deduced a title under a deed of gift from the plaintiff ; which after giving the slaves in unqualified terms with a warranty against the claims of all persons,  and a formal attestation clause, concludes thus :  " The above negroes are to remain in the possession of the said John Stubblefield, until his death."    This deed, which bore date 28th January, 1837, was never duly registered.

In the latter part of the year 1836, the negro woman with her oldest child, was under a mortgage, executed by the plaintiff to one Smith ; and the plaintiff residing some distance from the mortgagee, placed in the hands of the donee a sufficient sum of money to redeem them.    The donee having spent a part of the money, borrowed fifty dollars of one

Ragland, with whom he was then boarding, and in November, 1836, redeemed the slaves and carried them to Ragland, without saying any thing about his agency for the plaintiff.

The slaves remained at Ragland's some twelve or fourteen months, and even after the donee ceased to board with him, without any contract in respect to them. In November, 1837, the donee took the negro woman and her child from Ragland, and placed them in the possession of Washington Wilson, under a contract of hiring, but there was no proof that he represented himself to be his father's agent. In June, 1838, W. T. Stubblefield took the slaves into his possession, and shortly after married the defendant's daughter, and settled near him.

After the purchase of the defendant, on the 18th April, 1839, the slaves were left with W. T. Stubblefield to attend on his wife, who was then sick, and died in October, 1839. The defendant then took possession, and has retained it ever since. There was no proof that the defendant had notice of the agency of W. T. S., or of the reservation in the deed of gift, for the benefit of John Stubblefield, the donor.

In 1838, the slaves eloped from the donee's possession, and returned to plaintiff's residence, about twenty-five miles distant, where they remained several days. In order to obtain possession again, the donee was compelled to agree that he would return the slaves to the plaintiff, at a time agreed on; but in what time the witness did not recollect. The slaves were never returned as agreed, nor was the donee ever sued for their recovery.

The plaintiff prayed the court to charge the jury,—1. If they believed from the evidence, that Ragland, up to November, 1837, held the slaves under an agreement to pay hire for them to the plaintiff, his possession was, in law, the possession of the plaintiff. 2. If the plaintiff was in possession of the slaves several days in 1838, and gave them up on condition that they should be returned to him in a given time, this was such an interruption, in law, of the possession of W. T. S., as would prevent the operation of three year's continuous possession, to defeat the reservation in the deed of gift. Which charges the court refused to give.

Several charges were given by the court, in which the law

is affirmed to be substantially the reverse of what the charges prayed, supposes.

The evidence in respect to the hiring by Ragland, was as follows, viz : while the slaves were at Ragland's, or subsequently, a dispute arose between Ragland and the plaintiff as to how much the former should pay the latter per month, for the hire of the woman. The plaintiff insisted upon $12; Ragland was willing to pay $10, and no more. Pending the dispute, W. T. S. observed, that he was willing to pay the additional two dollars *per month*, rather than the arrangement should fail ; and the matter was adjusted accordingly.

A verdict was returned for the defendant, and judgment was rendered thereupon.

Pope, with whom was W. P. Chilton and F. W. Bowdon, for the plaintiff in error, made the following points : 1. The contract of Ragland to pay the plaintiff hire, for the negro woman, was made with the assent of W. T. S.; in point of law, it divested the previous constructive possession of the latter, if it ever existed, and restored it to the plaintiff; for the possession of one who stipulates to pay hire, is regarded as the possession of him under whom he holds. 2. The second charge was prayed upon the hypothesis that the slaves were, in 1838, in the possession of the plaintiff, *bona fide.* If this be so, as the plaintiff had the right to assume upon the evidence, then the possession of the donee had ceased, and must commence again when the slaves were restored to him. 3. Under the second section of the statute of frauds, the three years possession which invests the loanee with a title in favor of creditors and purchasers, must be an actual, not a constructive possession. The donee's actual possession commenced in 1838, when he received the slaves from Wilson; previous to that time he merely hired them out, and as it must be intended, in the character of agent for the plaintiff. Be this as it may, as he had no title, neither Wilson's nor Ragland's possession could be his by construction. To this it may be added, that the agency of the donee being established, and no proof of its withdrawal, its continuance will be presumed. [Story on Contracts, § 338.] Upon the first charge prayed, see 6 Ala. Rep. 622; 7 Ib. 379.]

S. F. Rice, for the defendant in error, insisted that the ruling of the Circuit Court conformed to the principles settled in this case, when it was here on two former occasions. [2 Ala. Rep. 684; 4 Id. 40.] Ragland did not agree to pay plaintiff hire for the future services of the woman, but for services already performed. This shows that there was no contract of hiring. It is not pretended that either Ragland, Wilson, or any one else deriving possession of the slaves under W. T. S. had any notice of his agency; and this cannot be presumed. The first charge prayed is abstract, and uncalled for by the proof. Both it and the second charge are opposed to one of the previous decisions of this court. [4 Ala. Rep. *supra.*] But if the charges should have been given, their refusal is not a fatal error; for the charges given lay down the law fully and correctly upon the entire case. [Yarborough v. Moss, at this term.]

COLLIER, C. J.—The second section of the statute of frauds, enacts, among other things, that where any loan of goods and chattels be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained for the space of three years, without demand made and pursued by due course of law on the part of the pretended lender; or where any reservation or limitation shall be pretended to have been made of a use or property, by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons so remaining in possession, to be fraudulent; and that the absolute property is with the possession; unless such loan, reservation, or limitation of use, or property, were declared by will or deed in writing, proved and recorded as aforesaid. [Clay's Dig. 254-5.]

When this case was here the second time, we said that one having possession as agent, may, as a donee with a reservation to the donor, or as a loanee, acquire a title in favor of creditors and purchasers, if the deed or writing is not recorded, and he remains in possession for three years, without demand made and pursued, by due course of law, and this al-

though the possession was first acquired as an agent. *Fur-ther* : "As it respects creditors and purchasesrs, the actual payment of the hire by W. T. Stubblefield, could not have interrupted the continuity of his possession, and in their fa-vor, if it continued for three years without demand made and pursued by due course of law, it would divest the reservation which the plaintiff made in his own favor." [4 Ala. Rep. 40.]

In the Bank of the State v. Croft, 6 Ala. Rep. 622, it was held, that where one acquires the possession of slaves under a contract with the owner to pay an equivalent for their ser-vices, and restore them to him at the end of the year, a re-newal of this contract from year to year, thus continuing the possession of the hirer, without interruption, for more than three consecutive years, is not a loan, &c. within the second section of the statute of frauds. In Johnston v. The Br. Bk. at Montgomery, 7 Ala. Rep. 379, the same doctrine is affirm-ed. See also Tatum v. Manning, at this term.

The facts in respect to the hiring of the negro woman to Ragland, are differently stated from what they were when this cause was here previously. The difference perhaps is not so material as to render inapplicable the principle then announced. Upon both trials the stipulation was, to pay hire for past services, without a previous contract be-tween the plaintiff and donee, to render an equivalent for the services of the slaves, or any acknowledgment by the latter of the possession of the former. According to the citations we have made, it sufficiently appears that the continuity of of W. T. S.'s possession was not interrupted by a contract to pay hire.

In respect to the second charge prayed, we think it clear, that it was agreeable to law, and should have been given. It supposes that the slaves were in the possession of the plaintiff before the expiration of three years, and being thus restored to him, if he parted with them, the limitation would only begin to run from the latter period. We must presume, *if it be ne-cessary*, that they returned to the plaintiff's house without any fault of his, and that he then stipulated, (as he rightful-ly might,) with W. T. S. that they should only be permitted to go into his possession, if he would undertake to return

them at some definite period. But even if the possession was tortiously acquired by the plaintiff, yet, as it was acknowledged by the donee, and the slaves received by him under the agreement we have stated, the same consequences, we shou ld think, would follow.

Between the time when the slaves were thus parted with, and the commencement of the action by the plaintiff, only about two years had elapsed, so that the defendant cannot if the facts supposed be true, claim the benefit of the statute upon which the defence has been rested. It follows that the second charge asked should have been given. For the error · in its refusal, the judgment of the Circuit Court is reversed, and the cause remanded.