## THOMAS vs. HENDERSON.

[TRIAL OF THE RIGHT-OF PROPERTY IN A SLAVE BETWEEN PLAINTIFF IN EXECUTION AND DAUGHTER OF DEFENDANT IN EXECUTION.]

1. *Endorsement of levy on fi. fa. admissible evidence against claimant.*—The sheriff's endorsement on a *fi. fa.* of his levy is admissible evidence against the claimant, on a trial of the right of property, for the purpose of showing its levy on the slave in controversy.

2. *Facts tending to show defendant's adverse possession, at or before levy, admissible evidence for plaintiff.*—That the defendant in execution resided on, and claimed as his own, the plantation on which the slave in controversy worked; that his son, who was controlling the slave avowedly as his overseer, and his daughter, who was the claimant, resided on the plantation with him at that time; and that said defendant, while the slave was being thus controlled, declared that his son was his overseer,—are facts tending to prove the defendant's possession under claim of ownership, and are admissible evidence to show adverse possession.

3. *Erroneous admission of evidence cured by instructing jury to disregard it.*—If illegal evidence is admitted for a single specified purpose, and the court afterwards instructs the jury "that that question is not before them and they are not to regard any proof on that subject," no injury can possibly result from the error.

4. *General objection to evidence, of which part is legal.*—A general objection to evidence as a whole, when a part of it is legal, may be overruled.

5. *Declarations of ownership by one in possession admissible as part of res gestæ.*—The declarations of the defendant in execution to the sheriff, when the latter was about to levy an execution on another slave as the property of his son—"that he might go contented without her, that he would never get a negro there on his son's account, and that every negro there belonged to himself"—when it is shown that the slave in controversy was then in his possession, are admissible evidence as part of the res gestæ, being explanatory of his possession.

6. *Waiver of objection to secondary evidence though primary is not produced.*—When

a party elicits, on cross-examination of a witness, parol evidence of judicial proceedings, which constitutes new matter and is directly responsive to the interrogatory, and afterwards declines to read the answers to the cross-interrogatories on the trial, he cannot, when his adversary offers to read them, raise the objection that the record was not produced nor its absence accounted for ; and that the evidence thus elicited is also incidentally stated by the witness in answer to a direct interrogatory, does not affect the principle.

APPEAL from the Circuit Court of Benton.
Tried before the Hon. JOHN E. MOORE.

TRIAL OF THE RIGHT OF PROPERTY in a slave named Jim, between Thomas Henderson, plaintiff in execution, and Mary Thomas, daughter of Athanasius Thomas, the defendant in execution, as claimant. The plaintiff's judgment was for $432, besides costs, and was rendered on the 1st November, 1847, in the Circuit Court of Benton county ; and the execution was issued on the 17th November, and levied on the 6th December, 1847. The trial was had at the October term, 1854. Numerous exceptions were reserved to the rulings of the primary court during the progress of the trial, but it is only necessary to state those which are decided by this court.

The plaintiff offered his execution in evidence, and proved the handwriting of the sheriff who made the levy under it ; and then offered to read the sheriff's endorsement on the execution of his levy, " as evidence that the negro Jim in controversy had been levied upon under said execution." The claimant objected to this, " because said endorsement was *res inter alios*, and was not evidence against the claimant in this action ; but the court admitted it for the purpose of showing a levy on said slave, but for no other purpose, and the claimant excepted."

" The plaintiff introduced a witness, who stated that, in 1844, Athanasius Thomas, the defendant in execution, and the claimant, who was his daughter, and James Thomas, her brother, lived together in the same house, and upon the same plantation, which was claimed and controlled by said Atha. Thomas ; that the negro in controversy, with others, worked upon the said plantation ; and that said James Thomas, during that year, openly controlled the said negro, with the others, as the overseer of said Atha. On being asked by the

claimant how he knew this fact, he said, that he knew it by seeing him managing and controlling said negroes, and by hearing said Atha. and James both say, at the time, that he was (acting) as the overseer of said Atha. The claimant then moved the court to exclude said evidence from the jury; and thereupon the plaintiff stated, that he expected to show an adverse possession of the slave in controversy by said Atha. Thomas, under a claim of title, within the knowledge of the claimant, for a length of time sufficient to render said slave liable for his debts; and that he offered this proof as a circumstance to show such adverse claim and possession, and that the same was within the claimant's knowledge. And plaintiff having introduced proof tending to show a possession and claim of said slave by said Atha. Thomas, hostile and notorious, the court admitted said evidence in that connection, and for that purpose, but for no other; and the claimant excepted to its admission." The bill of exceptions afterwards states, that "When the court came to charge the jury, they were told that the plaintiff had failed to make out any adverse possession, and that that question was therefore not before them, and they were not to regard any proof on this subject."

The plaintiff offered in evidence the deposition of one Darling Allen, taken on interrogatories and cross-interrogatories. In answer to the tenth direct interrogatory, this witness stated, among other things, that he knew said Atha. Thomas and his family previous to their removal from Fairfield district, South Carolina, which took place some time in the early part of the year 1842; that the boy Jim was once levied on by the sheriff of Fairfield, under an execution against Atha. Thomas, and was taken to the court-house; that this occurred some time in 1841; "that in the same year, the sheriff came to said Thomas, witness being present, with a *fi. fa.* against James Thomas; that the sheriff wanted to levy on Jenny, as the property of James; and that the old man told him, '*he might go contented without her, that he never would get a negro there on James' account, and that every negro there belonged to him*' (said Atha.), or words to that effect." The claimant objected to so much of this answer "as related to what Atha. Thomas said", as being irrelevant and illegal;

but the court admitted it, as being explanatory of the defendant's possession of the slave Jim, and the claimant excepted.

One of the cross-interrogatories propounded to this witness was in these words: "State, also, if said Atha. Thomas had not been notoriously insolvent for many years before he removed from South Carolina to this State; also, if Atha. Thomas, at any time, was under arrest for debt; and if so, and if more than once, state the first date at which he was so under arrest, and the manner of his discharge, if you know it." The witness answered the interrogatory as follows: "Witness never knew that Atha. was insolvent; he was once, and only once that witness knows, under arrest for debt; witness thinks it was at the suit of one Thomas Carson; that Atha. was *ca-saed*, and gave Mr. Thomas Henderson as his security, and afterwards Mr. Henderson had the debt to pay; this was, perhaps, five or six months before Atha. Thomas left." The claimant having declined to read the answers of this witness to his cross-interrogatories, the same were read in evidence by the plaintiff. The claimant objected to so much of the above answer, "as stated that Atha. Thomas was *ca-saed*, and gave Thomas Henderson as his security, who afterwards had the debt to pay, as being illegal and incompetent evidence. The plaintiff then stated to the court, that he would show that the debt so paid as the surety of said Thomas was the foundation of the judgment on which the execution in this case issued, and that he offered the evidence in that connection to show the existence of this debt before the sale to the claimant; and in that point of view, and upon that statement, the court admitted the evidence, and the claimant excepted. The plaintiff afterwards introduced proof, tending to show that the debt, upon which the judgment in this case is founded, did originate in said transaction."

These rulings of the court, with others which will be readily understood from the opinion, are now assigned for error.

ALEX. WHITE and G. C. WHATLEY, for the appellant:

The sheriff's endorsement of his levy on the execution against Athanasius Thomas ought not to have been admitted in evidence against the claimant in this suit, who was neither a party nor a privy to it. That it was offered to prove only

one fact, does not avoid the difficulty.   That fact was extrinsic of the record—namely, "as evidence that the negro in controversy had been levied on under said execution"; or, in other words, for the purpose of identifying the slave in controversy with the one levied on, and thus proving a fact outside of the record in order to make legal the proof of a levy, which otherwise is incompetent.   The recitals, admitting the execution to be a part of the record, are not evidence.— Snodgrass v. Decatur Bank, 25 Ala. 161.

The declarations of James Thomas were clearly improper evidence, nor was the error in admitting them cured by the instructions afterwards given to the jury.   The court should have told the jury, that these declarations were excluded from their consideration for every purpose whatever.   It cannot be presumed that the jury understood the meaning of the technical term 'adverse possession', about which the courts can scarcely agree.   The evidence was well calculated to mislead the jury, and the most explicit charge would scarcely have effaced its impression from their mind.—Florey v. Florey, 24 Ala. 246; Carlisle v. Hunley, 15 ib. 623.

The declarations of Athanasius Thomas, as sworn to by the witness Allen in answer to the tenth interrogatory, were irrelevant.   They related entirely to another slave, and it is not shown that the slave here in controversy was even mentioned at the time.

The answer of the witness Crosby to the eighth interrogatory, was illegal evidence, and ought to have been excluded on motion.   Where written evidence exists of the fact sought to be proved, it must be produced, or its loss accounted for, before resort can be had to secondary evidence.—McDade v. Mead, 18 Ala. 219; Smith v. Armstead, 7 ib. 702 ; Smelser v. Drane, 19 ib. 245; Ware v. Robinson, 18 ib. 105; Boone v. Dyke, 3 Mon. 529; Cope v. Arberry, 2 J. J. Mar. 296 ; Rex v. Inhabitants of Padstow, 4 Barn. & Ad. 208 ; Roberts v. Tennell, 3 Mon. 247; Jenner v. Joliffe, 6 Johns. 9; Hasbrouck v. Baker, 10 ib. 248; Cowen & Hill's Notes to Phillips' Evidence, vol. 2, pt. 1, p. 541; ib. pt. 2, p. 285; 2 Ad. & El. 35.

JAMES B. MARTIN, contra, made these points:—

1. The sheriff's return on the plaintiff's execution, show-

ing the levy on the slave in controversy, was read in evidence, for the sole purpose of proving the levy, and was confined to that purpose by the court. That it was admissible for that purpose, see Henderson v. Branch Bank at Montgomery, 11 Ala. 855; Lanier v. Branch Bank at Montgomery, 18 *ib*. 625; Garrett v. Rhea, 9 *ib*. 134.

2. The evidence showing the possession of Athanasius Thomas, was held competent in another branch of this same case.—Degraffenreid v. Thomas, 17 Ala. 602. The legality of the latter portion of the statement of the witness, is an immaterial question, since the objection was general.—Melton v. Troutman, 15 Ala. 535; Hatchett v. Gibson, *ib*. 587; same parties, 24 *ib*. 201; Newton v. Jackson, 23 *ib*. 335. But, even if the whole of this evidence was illegal, the error in admitting it was cured by its subsequent withdrawal from the jury under the charge of the court. If language more direct, positive and expressive could have been used to exclude it from the jury, the claimant ought to have suggested it at the time. Florey v. Florey, 24 Ala. 241; The State v. Givens, 5 *ib*. 747; Degraffenreid v. Thomas, 14 *ib*. 681.

3. The objection to that portion of Crosby's deposition to which exception was reserved, cannot be sustained; because, in the first place, it is in reply to a cross-interrogatory, which called directly and particularly for it.—Stewart v. Hood, 10 Ala. 600; Olds v. Powell, 7 *ib*. 652; Rogers v. Wilson, Minor's R. 407. This was not a cross-examination upon any matter called for by the plaintiff, but an independent question by which the defendant sought to elicit evidence beneficial to himself; and his experiment having failed, he now asks that the testimony may not be received against him. But the evidence itself is not obnoxious to the objection urged against it. There was no attempt to prove the contents of the *ca. sa.* or judgment, but simply the fact that an arrest had been made; and this fact it was competent to prove by parol.— Smith v. Armstead, 7 Ala. 702; Southwick v. Hayden, 7 Cowen's R. 334; Heckert v. Haine, 6 Binn. 16; Wishart v. Downey, 15 Serg. & R. 77; 5 Day's (Conn.) R. 298; 11 Sm. & Mar. 9; Andrews & Bro. v. Jones, 10 Ala. 461; Hogan & Co. v. Reynolds, 8 *ib*. 60.

CHILTON, C. J.—1. The cases of Garrett v. Rhea, 9 Ala. R. 134, Henderson v. The Branch Bank at Montgomery, 11 *ib.* 855, and Lanier v. The Branch Bank at Montgomery, 18 *ib.* 625, show that the court committed no error in permitting the endorsement by the sheriff of a levy upon the property in question to be read to the jury. This return is a part of the record, and the claimant estops herself from saying there is no levy, by putting in her claim, giving bond, &c.—Henderson v. Br. Bk. Montgomery, *supra.*

2. There can be no doubt of the right of the plaintiff in the execution to show that the property levied upon, either before or at the time of the levy, was in the possession of the de fendant in the execution, possession being *prima facie* evidence of title. The facts, that Atha. Thomas, the defendant in the execution, resided on and claimed as his own the plantation on which the slave in controversy worked,—that the claimant, who was his daughter, and James, who was controlling the slave avowedly as the overseer of his father, resided on said plantation with him, and that the father while the slave was being thus controlled, declared that James was his overseer,—all tended to establish the possession of the father under claim of ownership, and were certainly admissible as evidence to show an adverse possession. For this purpose alone this proof was distinctly allowed by the court; and the proof failing to show a possession for such a length of time as could ripen into a title, the court instructed the jury, "that the plaintiff had failed to make out any adverse possession, and that that question was therefore not before them, and they were not to regard any proof on this subject."

3. We cannot perceive how the jury could have been misled by the proof, even if it be conceded to be improper. The court expressly limited its admission to one plainly defined purpose, and afterwards told the jury they should disregard it as respects that purpose, inasmuch as there was a failure of suppletory proof to establish such adverse possession.—15 Ala. R. 623. Assuming that the jury were men of ordinary sense and apprehension, no injury could possibly have resulted from such proof.—Florey's Ex'rs v. Florey, 24 Ala. R. 241; 17 *ib.* 681–688.

4. But if James Thomas' declarations were improper, yet a

34

portion of the proof was clearly competent, and the objection was general, going to it as a whole. It might therefore, for this reason, have been properly overruled.—15 Ala. R. 535; 23 *ib.* 335.

5. What Athanasius Thomas said to the sheriff, when he was about to levy an execution upon the slave Jenny, as the property of James Thomas—to-wit, "that he might go contented without her,—that he never would get a negro there on James' account—that every negro there belonged to him, the said Athanasius Thomas," the slave in controversy being then in his possession,—was competent as explanatory of his possession, and properly admitted by the court as part of the *res gestæ.*

6. Neither was there any error in permitting the plaintiff to read the answer of Allen to the cross-interrogatory of the claimant, respecting the arrest of Athanasius Thomas under a *capias ad satisfaciendum.* The answer is responsive to the interrogatory, which elicits this new matter, and which, as it was connected with the consideration of the demand for the satisfaction of which this slave was sought to be condemned, was not irrelevant. The claimant, having examined the witness as to the arrest upon the *ca. sa.,* without requiring the production of the writ, cannot object, when the other side elects to read the proof so brought out upon his cross-examination, that the writ was not produced. The law does not allow a party thus to experiment,—to ascertain by actual examination what a witness will swear, and then admit or exclude the answers at his election.—Stewart v. Hood, 10 Ala. R. 607.

7. The 8th interrogatory requires the witness Crosby to state the extent of Athanasius Thomas' indebtedness before he left South Carolina, and how long it had continued ; and to state any facts the witness might know going to show his solvency or insolvency, and what general rumor in the neighborhood in which said Thomas then resided, said respecting his solvency, &c. The cross-interrogatory of claimant asks the said witness to state "If, at any time, Athanasius Thomas was under arrest for debt. If so, and if more than once, that he state the first date at which he was so under arrest, and the manner of his discharge from arrest ; and if, at the time

he was under arrest in 1835 or 1836, the boy Jim was not in the possession of William and Mary Thomas," &c. The witness speaks of the arrest of A. Thomas under a *ca. sa.* in his answer to the 8th interrogatory, and when he comes to answer the cross-interrogatory, he says, " A. Thomas was notoriously insolvent. He was under arrest on the *ca. sa.* before alluded to. This was five or six months before they went away. Can't say whether he was ever arrested in 1835 or 1836."

The bill of exceptions presents the objection arising upon this examination as follows : " Claimant objected to so much of the 8th interrogatory as is as follows—' after judgment he was *ca-saed*, and took the prison bounds, giving Thomas Henderson as his security. Henderson afterwards had the debt to pay, in consequence of Thomas going away' ; the ground of the objection being that said proof was incompetent and illegal. No record evidence of a judgment, *ca. sa.*, or of said Thomas' having been placed in the prison bounds, was produced." The court admitted the proof as evidence of the consideration of the demand of the plaintiff in the execution ; the evidence showing that the present execution was for a debt which Henderson had paid for said Thomas, under the above circumstances.

It is not necessary for us to decide whether the proof would have been illegal, as secondary evidence, had the interrogatory in chief called for it directly. Even conceding that it is secondary evidence, and falls under the rule that the better primary evidence must be adduced, or its absence accounted for, before it could be received, if no objection for this cause had been taken to the interrogatory, it would, perhaps, have been considered as waived. The point of waiver is presented in a much stronger aspect against the claimant by the facts before us. Here, the leading examination makes no inquiry for the *ca. sa.* or arrest under it. The claimant examines as to this, which is original matter, by cross-interrogatories ; and the answer objected to is directly responsive to such cross-examination, while it is incidentally stated as a response to the 8th interrogatory in chief. Under these circumstances, we think the claimant cannot raise the objection at the trial, that the judgment and *ca. sa.*, with the proceedings thereon of record, were not produced.

Had the direct examination called for this proof, and the cross-examination been limited to it, its exclusion upon the direct examination would have entitled the claimant to have it also excluded upon the cross-examination.—Olds v. Powell, 7 Ala. R. 652. But in this case the claimant's inquiry calls for it as original matter; and it is proper to refer the testimony to his specific interrogatory, rather than as elicited by the direct examination, which does not call for it, and in response to which it was, as we have said, incidentally detailed by the witness.

We are unable to perceive any error in the record, and the judgment must be affirmed.