## UPSON vs. RAIFORD.

[TROVER AGAINST SHERIFF FOR CONVERSION OF SLAVES CLAIMED BY PLAINTIFF UNDER PURCHASE FROM DEFENDANT IN EXECUTION.]

1. *Receipt of deceased person, admissibility and effect as evidence.*—The receipt of a person since deceased, discharging a demand due to him, is evidence of the payment, and of the person by whom the payment was made.

2. *Of contradicting a party's own witness.*—Although a party is not allowed to discredit his own witness, he is not precluded from giving evidence which varies from the testimony of his witness.

3. *General objection to evidence.*—A general objection to evidence, of which a part is legal, may be overruled.

4. *Declarations explanatory of possession.*—The declarations of a person in possession of slaves, to the effect that they belong to him, are competent evidence for the purpose of explaining his possession.

5. *Charge withdrawing evidence from jury.*—A charge which has the effect of withdrawing from the consideration of the jury testimony which tends, even slightly, to sustain either the plaintiff's case or the defense, is erroneous.

6. *Construction of charges.*—While the charge of the court to the jury must be construed with reference to the proof, it would be improper for the appellate court to undertake to determine the weight of the evidence, and to construe the charge upon the hypothesis that the preponderance of conflicting evidence was on one side or the other.

7. *Vendor's retention of possession, after absolute sale, explained by contract of hiring.*—The retention of possession by the vendor of a slave, after an absolute sale, may be explained by proof of a *bona-fide* hiring, the consideration of which was paid.

8. *Consideration of such contract.*—The retention of possession by the vendor under a contract of hiring, the consideration of which was the board and clothing of the slaves, though a suspicious circumstance, may consist with fairness and honesty ; and the fact that the keeping of them was expensive to him, would not, of itself, authorize the court to assume that the hiring was simulated and unreal.

9. *Statute of frauds as to three years possession of property.*—A possession of slaves under a *bona-fide* contract of hiring, for valuable consideration, is not within the second section of the statute of frauds ; and it makes no difference, in legal effect, whether the hiring is at will, from year to year, or for a definite period.

10. *What is possession upon valuable consideration.*—If the vendor of a family of slaves retains possession of them, after an absolute sale, under a *bona-fide* contract of hiring, the consideration of which is their board and clothing, this would be a possession upon valuable consideration, if the chief value of the property was its prospective growth and improvement, and the board and clothing of the slaves was a fair equivalent for such services as they could render.

11.. *When fraud is question of law or of fact.*—Although fraud *vel non*, when the facts are clear and undisputed, is a pure question of law for the determination of the court; yet, where there is any conflict in the evidence, or where the facts are not clear and indisputable, the question should be left to the decision of the jury.

APPEAL from the Circuit Court of Perry.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Edwin Upson against Philip B. Raiford, to recover damages for the defendant's alleged conversion of certain slaves, to-wit, a woman named Minerva, and her three children ; and was commenced in April, 1851. The plaintiff claimed the slaves by purchase from his brother, Lauren Upson, in 1845; while the defendant, as sheriff of said county, levied sundry executions on them, in 1850, as the property of said Lauren Upson,—said executions being issued on judgments rendered against said Lauren Upson in 1849 and 1850.

The material facts of the case, as disclosed by the bill of exceptions, may be thus stated. The plaintiff proved his purchase of the slaves by the deposition of said Lauren Upson, who testified, in substance, that the slaves were sold under an order of the chancery court prior to 1843, and were purchased by E. F. King ; that they were in his (L. Upson's) possession at the time of the sale, and he immediately afterwards-hired them from King in consideration of furnishing them with board and clothing ; that in 1844 he purchased them from King, at the price of $526 67, of which sum he paid $200 in cash, and gave his note for the balance, with Edwin Upson as surety, from whom also he borrowed the $200 ; that when the note fell due, finding himself unable to pay it, and King refusing to take them back, he proposed to sell the negroes to Edwin Upson ; that Edwin Upson reluctantly consented to take them at $450, and the contract was consummated at that price ; that the purchase money was paid at the time, and a bill of sale executed for the slaves, which is exhibited with his deposition ; that this took place on the 10th May, 1845 ; that he immediately hired the slaves from his brother, agreeing to furnish their board and clothing, and they remained in his possession under the contract until

they were levied on by the defendant; that Minerva was almost blind with a scrofulous affection, and was able to do but very little work, and some of her children also exhibited symptoms of scrofula ; and that the slaves, during all the time of his possession, with the exception of two years, " were a bill of expense" to him.

The plaintiff produced and proved Lauren Upson's said note to King, for the balance of the purchase money of the slaves, on which a credit of $11 was entered as of the 23d April, 1844, and also a receipt, signed by said King, in these words : "Rec'd the balance of the within note from Edwin Upson, July 14, 1845." After proving King's death, and his signature to this receipt, the plaintiff offered to read it to the jury, " to show that he had paid said King a part of the purchase money"; but the court excluded it, and the plaintiff excepted.

To show that the plaintiff's alleged purchase was fraudulent, the defendant proved that Lauren Upson was then insolvent ; and the court allowed him to prove a declaration of said Lauren Upson, made after said alleged sale, and while he was in possession of the slaves, "in substance as follows : 'That said slaves belonged to him, but that he had made a bill of sale of them to the plaintiff to avoid paying his debts.'" To the admission of this declaration the plaintiff excepted.

" The court charged the jury, amongst other things,—

" 1. That if it was understood, at the time of the contract of sale between Lauren Upson and plaintiff, and was a part of the consideration of said contract, that Lauren Upson should retain possession of the slaves under a contract of hiring, and there was no change of possession when the sale was made,—then the transaction would be fraudulent in law, and they must find for the defendant.

" 2. That if the property sued for remained in the possession of Lauren Upson, from the time of the sale to the time of the levy, this retention of possession by him was not, in law, sufficiently explained by the evidence tending to show that he was to keep said slaves for their board and clothing, if the keeping of said slaves was expensive to him, and if it was understood at the time of the sale that he was to keep them."

Upson v. Raiford.

The plaintiff excepted to these charges ; and he now assigns them for error, with the rulings of the court on the evidence.

WM. M. BROOKS, for the appellant.—1. The receipt of King, endorsed on the note, was competent evidence, and should have been admitted.—Harrison v. Harrison, 9 Ala. 73; Dubose v. Young & McDowell, 14 Ala. 139.

2. The declarations of L. Upson, " that the slaves belonged to him, and that the bill of sale was made to avoid paying his debts," were not admissible for the purpose of explaining his possession. They made no reference to the possession, and are not necessarily connected with it ; but they tend to show title in him, and fraud in the sale, and therefore should not have been admitted as explanatory of his possession.— Thompson v. Mawhinney, 17 Ala. 367 ; Nelson v. Iverson, *ib*. 218 ; Abney v. Kingsland, 10 *ib*. 358 ; McBride v. Thompson, 8 *ib*. 650 ; Weaver v. Yeatman, 15 *ib*. 539. Nor are these declarations admissible upon the idea of a fraudulent combination ; for they are " narrative of a past occurrence," and not " concomitant with the principal act."—1 Green. Ev. § 110. As between the vendee and the execution creditor of the vendor, the declarations of the vendor should not be admitted in evidence, when there is no fraudulent combination, unless in disparagement of his own title.

3. The creditor, in whose favor a sale is held to be fraudulent, should be a creditor at the time of the sale, unless there be fraud in fact. In this case, the sale was in 1845, the declarations of the vendor in 1846, and the debts of the creditors accrued in 1849.

4. The first charge of the court is erroneous, because, in the first place, it invaded the province of the jury ; and for the further reason, that it assumed that the sale would be fraudulent, if it was a part of the contract that Lauren Upson should retain the possession of the slaves under a contract of hire, whereas the agreement to hire, instead of invalidating the sale, removes in fact the presumption of law arising from the vendor's continued possession after an absolute sale.— Henderson v. Mabry, 13 Ala. 713 ; Millard's Adm'rs v. Hall, 24 Ala. 209.

5. The second charge was also erroneous. It assumes, 1st,

that the sale was absolute ; 2d, that the vendor's possession was not explained by the contract to keep the slaves for their board and clothing ; 3d, that if it was understood by the contract that the vendor was to keep the slaves, and if the keeping of them was expensive to him, the vendor's possession was unexplained. That the keeping of the slaves was expensive to the vendor, would rather tend to show that the sale was fair. It being shown that the slaves were hired to the vendor, and the presumption of fraud arising from his continued possession being thus rebutted, it can make no difference, in principle, whether the hire was to be paid in money, or in the boarding and clothing of the slaves. It is not pretended that the vendor did not pay enough for the hire of the slaves, but the objection is that the board and clothing was too much—that they were expensive to him. If a vendor should agree to pay $150 for the hire of a slave just sold by him, it surely could not be said that the transaction was illegal, or that his possession was not sufficiently explained, because he paid $50 more than the hire was worth.

I. W. GARROTT, *contra.*—1. There was no error in the exclusion of the receipt, because it was irrelevant. It bears date the 14th July, 1845 ; while the trade between Lauren and Edwin Upson, according to the testimony of the former, took place on the 10th May previous, and the purchase money was then paid. It was also objectionable, because it contradicted the plaintiff's own witness on this point ; which is not allowable.

2. The declarations of Lauren Upson, which were objected to, were, at least in part, competent evidence, as explanatory of his possession.—Borland v. Mayo, 8 Ala. 104 ; McBride v. Thompson *ib.* 650 ; Darling v. Bryant & Walker, 17 *ib.* 10 ; Nelson v. Iverson, *ib.* 216 ; Hadden v. Powell, *ib.* 314 ; Mobley v. Bilberry, *ib.* 428 ; Nelson v. Iverson, 24 *ib.* 9. Conceding, then, that a portion of the evidence was inadmissible, the court did not err in overruling the objection, which was general.—Gibson v. Hatchett & Bro., 24 Ala. 201 ; Murrah v. Branch Bank, 20 Ala. 392 ; Martin v. Hardesty, 27 Ala. 458 ; Thomas v. Henderson, 27 Ala. 523.

3. A reference to the facts of the case will show the

correctness of the first charge of the court. Lauren Upson, the defendant in execution, was insolvent; and his brother, the plaintiff, lived in Eutaw, forty miles distant from his residence. In a private room, no one being present, Lauren sells to his brother five negroes, for $450 ; and it is at the same time agreed that Lauren shall retain the possession, in consideration of his boarding and clothing the slaves. Under this agreement, Lauren retained the possession of the slaves, from the time of the alleged sale in 1845, until they were levied on. Will the law tolerate such a transaction ? Who could know, under such circumstances, that the slaves belonged to Edwin Upson ? That possession, under such circumstances, is *prima facie* fraudulent, is shown by the following authorities : P. & M. Bank of Mobile v. Borland, 5 Ala. 531, 547 ; Borland v. Walker, 7 Ala. 269, 279 ; Mauldin & Terrell v. Mitchell, 14 Ala. 814 ; Sturdevant v. Ballard, 9 Johns. 343 ; Hanford v. Archer, 4 Hill, 271 ; White v. Cole, 24 Wendell, 116 ; Driver v. McLaughlin, 2 Wendell, 576 ; Collins v. Brush, 9 *ib.* 198.

4. Lauren Upson's continued possession was wholly inconsistent with his alleged absolute sale to Edwin. There are no circumstances shown, which, in law, explain this continuous possession, for so many years. That Lauren Upson, himself insolvent, should have been keeping a lot of negroes for so many years, for his brother, when (in his own language) they were "a bill of expense to him," is certainly contrary to the ordinary course of dealing in business matters. The authorities above cited fully show that the possession is not explained.

5. An attaching creditor is a purchaser, and his rights are superior to one who, having bought, suffers the property to remain in the vendor's possession ; no notice of the sale being shown.—Coffin v. Ray, 1 Metcalf, 212 ; Shumway v. Rutter, 7 Pick. 58 ; Lanfear v. Sumner, 17 Mass. 110.

6. Lauren Upson's continuous and uninterrupted possession for more than three years made the property liable for his debts.—Myers v. Peck's Adm'r, 2 Ala. 649 ; Oden v. Stubblefield, 4 Ala. 40 ; same case, 9 Ala. 651 ; Melloy v. Odom, 20 Ala. 502 ; Knight v. Bell, 22 Ala. 198. Even a demand, receipt, and re-delivery, in private, are not sufficient to prevent the loanee's possession from operating in favor of his creditors.

2 Ala. 657 ; 5 Munf. 305. A contract to pay hire, after possession is acquired and the statute has commenced to run, does not affect the statute, and the property becomes subject to the debts of the possessor.—Bank v. Croft, 6 Ala. 622.

WALKER, J.—It is a well-established doctrine of the law, that the entry by a person of a receipt, discharging a demand due to him, is, after his death, evidence of the payment, and of the person who made the payment.—Harrison v. Harrison, 9 Ala. 73 ; Cowen & Hill's Notes to Phillipps on Evidence, 3d edition, part I, p. 258, note 193 ; also, Goodgame v. Cole, 12 Ala. 77 ; Dubose v. Young & McDowell, 14 Ala. 139. The evidence offered, and rejected by the court, clearly comes within the rule. It was not irrelevant, but contributed to show a compliance, on the part of the appellant, with one of the terms of his purchase from Lauren Upson, to the effect that he should pay off the note of King. The fact that the receipt was opposed to the statement of Lauren Upson, that King's note was discharged, at the time of the purchase, by the appellant handing the money to the witness, and the latter handing it to King, does not affect its admissibility. While it is not permissible for a party to discredit his own witness, there is no rule of law which precludes him from giving evidence varying from the testimony of a witness introduced by him.

The declarations of Lauren Upson, given in evidence by the appellee, were made while he was in possession of the slaves, and were, in substance, that the slaves belonged to him, but that he had made a bill of sale of them to the plaintiff to avoid paying his debts. If any portion of this evidence was legal, we cannot say that the court erred in overruling the objection to it ; because the objection was general. That part of the evidence which consists of the declarant's statement that the property belonged to him, he being at the time in possession, was certainly admissible, for the purpose of explaining his possession. This identical point, having been repeatedly decided by this court, must be regarded as now settled.—Martin v. Hardesty, 27 Ala. 460 ; Thomas v. Henderson, 27 Ala. 530 ; Thomas v. DeGraffenreid, 27 Ala. 650; Nelson v. Iverson, 24 Ala. 16 ; same case, 19 Ala. 95 ; same

case, 17 Ala. 222; Perry v. Graham, 18 Ala. 825; Darling
v. Bryant & Walker, 17 Ala. 12; Mobley v. Bilberry,
17 Ala. 428.

A charge which has the effect of withdrawing from the
consideration of the jury testimony which tends, even slightly,
to sustain the plaintiff's case or the defendant's defense, is
erroneous.—Holmes v. The State, 23 Ala. 23; Reese v. Beck,
25 Ala. 659; Edgar v. McArn, 22 Ala. 813; Pritchett
v. Munroe, 22 Ala. 501. While the charge of the court must
be construed in reference to the proof, it would be improper
for this court to undertake to determine the weight of
evidence, and to construe the charge upon the hypothesis that
the preponderance of conflicting evidence was on one side or
the other.—Dill v. Camp, 22 Ala. 261. Therefore, in deter-
mining upon the charge given, it is our province to inquire
as to the tendencies, and not as to the weight or credibility
of the proof.

We cannot say, after a careful examination, that there was
no proof conducing to show a *bona-fide* hiring by the plaintiff
to Lauren Upson, for an adequate consideration. It should
have been left to the jury to determine the effect of the
evidence on that subject. The first charge of the court
assumes that, notwithstanding the possession of the slaves,
was retained by Lauren Upson upon a contract of hire, the
conveyance to the plaintiff would be 'fraudulent in law. If
this charge was given upon the assumption that there was no
evidence conducing to show the *bona fides* of the hiring and
the adequacy of the consideration, it is erroneous, for the
reasons already stated. If it was given upon the supposition
that the retention of possession by the vendor, after an abso-
lute sale, could not be explained by proof of a *bona-fide* hiring,
the consideration of which was paid, it was still improper.
It is undoubtedly the law, that such a hiring would be a
sufficient explanation to remove the presumption of fraud
from the inconsistency of a continued possession after an
absolute sale.—Planters' & Merchants' Bank v. Borland,
5 Ala. 548; Borland v. Walker, 7 Ala. 278; Millard v. Hall,
24 Ala. 209; Maulden v. Terrell & Mitchell, 14 Ala. 814.

The second charge given can only be correct, upon the
supposition that a contract, made at the time of the sale, by

which the vendor was to pay the hire in the board and clothing of the slaves, would not be a sufficient explanation, if it were expensive to the vendor, although the board and clothing might be a fair compensation for the use of the slaves, and the hiring might be *bona fide*. The court could not, in this case, assume that there was no proof conducing to show that a hiring for the board and clothing of the slaves was not upon a fair consideration and *bona fide*. The fact that the keeping of the slaves was expensive to the vendor, would not, of itself, be sufficient to authorize the court to assume in the charge that the hiring was simulated and unreal. Its effect should have been left to the consideration of the jury. It is conceivable that a *bona-fide* hiring might become expensive to the bailee. It is true that the fact of the vendor's retaining the slaves upon a contract of hiring, the consideration of which was their board and clothing, would be a suspicious circumstance of weight; but it is explicable, so as to make it comport with fairness and honesty. If, from sickness and infancy, it would be a fair contract to pay the hire in the board and clothing of the slaves, we see no reason why such a contract should be condemned on account of the consideration alone. It might be a favorable arrangement for the owner, to have such slaves taken care care of until their health might improve, or until the younger slaves might grow up and become fit for active labor.

This charge is sought to be maintained, by reference to that part of the statute of frauds having reference to three years possession without demand.—Clay's Digest, 255. The act provides, " that if the borrower of goods and chattels shall have remained in possession for three years, without demand made and pursued by due course of law ; or where a reservation or limitation shall be pretended to have been made of a use or property, by way of condition, reversion, remainder, or otherwise, the possession whereof shall have remained with another as aforesaid ; the same shall be taken, as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation, or limitation of use or property, were declared by will, or by deed in writing," &c. The third section of the

act excludes from the operation of the statute above quoted estates or interests in lands, goods or chattels, which are "upon good consideration," and *bona fide* lawfully conveyed to any person. The term "good consideration," in this statute, was correctly held, in the cases of the Bank v. Croft, 6 Ala. 622, and Johnson v. Bank, 7 Ala. 379, to be equivalent in meaning to valuable consideration. Those possessions, then, which are upon valuable consideration and *bona fide*, are without the operation of that part of the statute which subjects the property possessed for three years to be regarded, as to creditors and purchasers, as belonging to the possessor. A possession under a *bona-fide* contract of hiring, for valuable consideration, would manifestly be such a possession. It is the *bona fides* and the valuable consideration upon which a possession is held, that brings it within the exception ; and therefore, if the hiring be attended by those qualifications, it would make no difference, in legal effect, whether it was for a definite period, from year to year, or until the owner should think proper to terminate the bailment. If there be anything in the nature of the contract of hiring, conducing to show that the arrangement was one of fraudulent intent, it is a subject for the consideration of the jury.

There is no decision of this court at variance with this position. In the case of Oden and Stubbenfield, reported in 2 Ala. 684, 4 Ala. 40, and 9 Ala. 651, the question whether a contract to pay for the past possession of slaves would protect the title of the alleged owner, was decided in the negative. The decisions in Tatum v. Manning, 9 Ala. 145, Johnson v. Bank, 7 Ala. 379, and Bank v. Croft, 6 Ala. 622, recognize the principle we have laid down.

The plaintiff's vendor retained the possession of the slaves for a period exceeding three years. This possession would, under the second section of the statute of frauds, entitle the creditors of him in possession to treat them as their debtor's property, unless that possession was *bona fide* and for a valuable consideration. If the testimony was such as to authorize the court to assume that the possession was not *bona fide* and for a valuable consideration, the second charge might be maintained, for the continued possession of the plaintiff's vendor is an undisputed fact in the case. Under the doctrine

which we have already laid down, the court could not so assume ; because there was some proof, conducing to show a *bona-fide* hiring by Lauren Upson from the plaintiff. We do not intend to determine the weight or credibility of the proof : we merely intend to say, that there is such proof ; and if so, however weak it may be, its effect and credibility should have been left to the jury. There is testimony conducing to show that the purchase of the slaves by the plaintiff was the result of necessity, and not of need of the property ; that the slaves had, for some time, been in the family of Lauren Upson ; that by the contract between Lauren and Edwin Upson, the latter was to pay the doctor's bills and the taxes; that Lauren Upson, one year, gave his note for fifty dollars hire ; that one of the slaves, Sarah, was taken away by Edwin Upson when she attained an age at which she became serviceable to him ; that the board and clothing of the slaves was a full equivalent for their services ; and that some of them were young, and, while kept by Lauren Upson, were attaining an age when they would become useful. We are not prepared to say, with these facts in the bill of exceptions, that there was no proof conducing to show that the contract, under which Lauren Upson kept possession, was not a *bona-fide* hiring for a valuable consideration. The effect of this testimony should have been left to the jury: That the testimony may be weak, is no argument against our view of the question. It is not the province of the court to determine its weight ; and we wish it to be distinctly understood that we do not intend to determine the weakness or strength of the testimony on either side, and that in noticing some of the testimony in the case, we have merely designed to discharge our duty, in determining the correctness of the assumptions in the charges, and not to indicate the effect which the jury ought to give to it.

Whether or not a contract of hiring for the board and clothing of the slaves would take the continued possession for three years out of the statute of frauds, would depend upon whether the board and clothing was a valuable consideration, and the contract itself *bona fide ;* and these, in the case before us in the bill of exceptions, are questions for the jury. If the board and clothing would be a fair equivalent

for such services as the slaves could render, and the prospective growth and improvement of the property gave to it its chief value, the consideration would be valuable. The *bona fides* of the transaction would be a question for the jury, determinable from all the circumstances. In Swift v. Fitzhugh, 9 Porter, it is said that, " when the facts are clear and undisputed, the question of fraud or not is a pure question of law." In the case of the Planters' & Merchants' Bank of Mobile v. Borland, the remark is made, " There is no question that, the facts being fully ascertained, fraud is a question of law." In Henderson v. Mabry, 13 Ala. 715, Judge Chilton, speaking in reference to a charge that the special circumstances in evidence before the jury, if true, were sufficient to rebut the presumption of fraud arising from continued possession by the vendor, says : "This charge, had there been a conflict of proof upon the question of fraud, would, perhaps, have been improper, inasmuch as its effect would have been to withdraw from the consideration of the jury the weight and credibility of the doubtful or conflicting proof.—See Boyd & Macon v. McIvor, 11 Ala. 822. But, as before stated, the proof was not of this character. The facts were clear and undisputed ; and it is proper, in such case, that the court charge directly upon them, and give the law of the case as applicable to them without hypothesis." The question of the valuable consideration and *bona fides* of the hiring, in this case, depends upon facts, some of which bear remotely upon it, and the deductions from which are by no means clear and indisputable. Upon the authority of the cases cited, the court should not under-take to determine those facts ; but should declare the law hypothetically, and leave the jury to find the facts.

The judgment of the court below is reversed, and the cause remanded,