## BENNING *vs.* NELSON.

23 801
113 575

1. In a claim suit under the statute, where the plaintiff in execution attacks the *bona fides* of the deed executed to the claimant by the defendant in execution, as having been made with intent to hinder and delay the grantor's creditors, evidence that the grantor executed another deed on the same day to the same grantee, who was his son and a minor, that the grantor was in embarrassed circumstances at the time, and that the two deeds conveyed all his property in this State, is relevant to the issue, and its weight must be determined by the jury.

2. The assent of a creditor to a deed of trust of which he is the beneficiary will be presumed, and the deed becomes perfect on its execution as against other judgment creditors who afterwards levy executions on the property; but if the deed is made with intent to hinder and delay creditors, an actual assent by the beneficiary before the levy of an execution is necessary, to render it valid as against the plaintiff in execution.

ERROR to the Circuit Court of Tallapoosa.

Tried before the Hon. ROBERT DOUGHERTY.

TRIAL OF THE RIGHT OF PROPERTY between Henry L. Benning, plaintiff in execution, and William N. Nelson, claimant. Two executions were issued on a judgment in favor of said Benning against Thomas M. Nelson, and were levied on the property now in controversy as the property of the defendant. A claim was interposed in each case by said William N. Nelson, and bond given according to the statute. The first execution was levied on three negroes, to-wit: Jim Hardy, Kesiah and Jerry ; and the second was levied on "forty head of cattle, eight mules, two wagons, fifty barrels of corn, four thousand pounds of fodder, six sows and pigs, and two yoke of oxen." The two claims suits were tried together, and the issue was, whether the property embraced by each levy was subject to the execution levied on it.

On the trial, the plaintiff read in evidence the two executions aforesaid, with the returns thereon endorsed showing the levies, the interposition of the claim, and that the defendant had no other property in the county subject to the executions ; and then proved that said defendant in execution bought a plantation in Tallapoosa in 1836 or 1837, and resided thereon until about

1844, when he removed with his family to Columbus, Georgia; that after his removal he continued to cultivate said plantation, with the same slaves which he had owned and used in cultivating it for five or six years previous to 1844, and has employed overseers on said plantation every year until 1850, and has come up from Columbus every summer and spent his summers on said plantation; that the slaves levied on were among the slaves so owned, possessed and used by said defendant; that they, and the other personal property levied on, were on said plantation when they were respectively levied on, and in the possession of the overseer, who was employed by said defendant, and was in his service. He also proved the separate value of each article levied on, and rested his case.

The claimant then proved that said defendant, in the State of Georgia, on the 20th December, 1838, married Anna M. Carnes, and on the da - before his marriage entered into an ante-nuptial contract with her, which, after proving its execution, claimant read in evidence to the jury. This deed recites the intended marriage, and that said Anna M. Carnes was possessed of property amounting to $20,000, consisting of lands, negroes, Bank stock, debts, household furniture, &c., which property the said Thomas M. Nelson was to receive "as and for the said Anna's marriage portion;" in consideration of which, the said Nelson covenants "to settle and charge his estate with the sum of $20,000, for the benefit of the said Anna and her heirs, in lieu of dower and of the property received through her, for her own proper use and benefit, free from any liabilities of the said Thomas M. Nelson." The claimant also proved that, at the time of the execution of said contract, said Anna owned property to the amount of $20,000, which passed into the possession of said Nelson on their marriage.

The claimant then read in evidence, after proving its execution, a deed of trust executed by said defendant in execution to claimant, on the 22nd September, 1846, conveying to him about thirty negroes, including the three now levied on, "together with the mules, plantation utensils, stock of all kinds and crop of provisions on the plantation of said Nelson in Tallapoosa," "in trust for the part payment of the above mentioned marriage settlement." The claimant then introduced a witness, "who testified that he was the overseer on said plantation during the

year 1849, and was such at the time each of said levies was made; that he knows the three negroes levied on, and that they are a part of the negroes mentioned in the foregoing deed of trust; that he also knows the property mentioned in the second levy; that the corn and fodder therein mentioned was made on said plantation, by the slaves mentioned in said deed of trust, during the year 1849; that the cattle, mules, wagons, oxen, sows and pigs, mentioned in said levy, are all the property of that kind or description which was used in making that crop, or was on the plantation for consumption, and used that year; that the mules, cattle and oxen were on the plantation in the year 1847. The claimant then rested his case."

The plaintiff then read in evidence, after proving its execution, a deed of trust executed by the said defendant in execution to the claimant, dated said 22nd day of September, 1846, conveying said plantation in Tallapoosa and some twenty eight negroes, in trust for the payment of certain specified creditors of the grantor. "It was also proved that both of said deeds of trust were executed on the same day, at the same time, by the same grantor to the same grantee, and that they embraced all the property then owned by said defendant in execution in the State of Alabama; that the claimant was about twenty years of age, was the son of said defendant in execution, and resided in Columbus, Georgia; that, at the execution of said deeds of trust, said defendant in execution was indebted to plaintiff about $1500, and to one Lockwood about $1660, besides some other small debts in Alabama; and that the debt on which plaintiff's judgment and execution aforesaid were founded was of older date than either of said deeds of trust."

The plaintiff offered to prove "that some of the slaves conveyed by said last mentioned deed of trust were worked and used in making the crop on said plantation in 1848 and 1849. The claimant objected to this evidence, and the court refused to admit it; to which plaintiff excepted."

"The foregoing was, in substance, all the evidence offered or adduced on the trial of this cause; and the court thereupon charged the jury, that if the said defendant in execution and his wife, before their marriage, executed the ante-nuptial contract aforesaid, and that they were afterwards married, and that her husband received $20,000 worth of property with her, then the

said contract constituted her a creditor of said defendant in execution ; and if, after their marriage, on the 22d September, 1846, in consideration of said ante-nuptial contract, said defendant executed the deed of trust of that date read in evidence by the claimant, although the jury might believe that the deed of the same date read in evidence by the plaintiff in execution was fraudulent, this would not affect the deed to the claimant, and that they ought to find for the claimant. The plaintiff in execution excepted to this charge.

"The plaintiff in execution asked the court to charge the jury as follows, to-wit : if the jury believe the foregoing evidence, and if they believe from the evidence that the deed executed by said defendant in execution to the claimant on the 22nd September, 1846, and read in evidence by the claimant, was executed with the intent to delay, hinder and defraud the creditors of said defendant, and if they further believe that such intent was known to and concurred in by the claimant at the time of the execution of said deed, and if they further believe that the said Anna M., the wife of said defendant, had not assented in fact to its provisions, nor claimed any benefit under it, before the said first levy was made, tnen the jury ought not to find for the claimant. The court refused to give this charge, and the plaintiff excepted."

The plaintiff now assigns for error, that "the court below er . red as shown in the bill of exceptions."

RICE & MORGAN & BELSER, for plaintiff in error.

GEO. D. HOOPER and L. E. PARSONS, contra.

PHELAN, J.—The question of fraud calls for and justifies great latitude in the admission of evidence. The proof made by Benning, when attacking the bona fides of the deed in trust made in favor of Mrs. Nelson, that two deeds were made at the same time, by the same grantor, to the same trustee, that the grantor was the father of the trustee who was a minor at the time, and that the two deeds embraced all the property of the grantor in this State at the time, and that he was then embarrassed with debt, was properly admitted as relevant to the issue touching the bona fides of the trust deed upon which the claimant relied. These things of themselves might be easi-

ly rebutted, and might deserve but little weight as tending to prove fraud in the deed in favor of Mrs. Nelson, the consideration for which was fully shown. Still the evidence was relevant, and its weight was for the jury to decide. We cannot, therefore, say that there was no evidence in the case, tending to show that the trust deed in favor of Mrs. Nelson was made "to hinder, delay and defraud creditors."

The determination of this point settles the main question in the case, that raised by the refusal of the court to instruct the jury as requested by the counsel for Benning, the plaintiff in execution.

No doubt the principle contended for by the counsel for the claimant, is true: that the deed in trust in favor of Mrs. Nelson, wife of the defendant in execution, being evidently for the benefit of that lady, her assent to its provisions is and ought to be presumed. Numerous cases in our court and elsewhere go to establish this doctrine.—Lockwood v. Nelson, 16 Ala. 294 ; Kinnard v. Thompson, 12 Ala. 487; 11 Wheaton 73 ; 16 Peters 139.

But that principle will not avail in such a case as the one presented by the charge requested by the counsel for plaintiff in execution and refused. That case is this : If you (the jury) believe from the evidence that this deed in trust, made in favor of Mrs. Nelson, was made "to hinder, delay and defraud creditors ;" that both the grantor and trustee concurred in that design, and that no actual assent was made to it, or benefit claimed or taken under it, by the *cestui que trust*, Mrs. Nelson, until after the lien of the plaintiff's execution had attached upon the property, then you must find for plaintiff in execution.

The principle of law here involved was fully considered and settled in the case of Townsend v. Harwell, 18 Ala. 301. None of the precedents met the case, but the argument of the present Chief Justice we consider sound, and that case will be followed in this instance. The argument in brief may be stated thus : The statute declares positively, that a deed " made to hinder, delay and defraud creditors," shall be void, except as against *bona fide* purchasers for a valuable consideration. To this it is replied, that the beneficiary of a trust deed plainly beneficial to him, where he is a creditor of the grantor, is a *bona fide* purchaser for a valuable consideration, and as the law presumes the

assent of such an one, the deed becomes perfect in law on its execution, and no other creditor can attach or levy successfully after that time. The answer is: No; the law will presume such an assent, all things being fair and *bona fide* on the part of the grantor; and to show that the *cestui que trust* is an honest creditor to the full amount of the debt secured by the deed, and the security not more than reasonable, is to repel, by the strongest and most convincing proof, the imputation of any design on the part of the grantor " to hinder, delay and defraud creditors," at the time he made the deed. Still, if there is any proof tending to show fraud on the part of the grantor, it is for the jury alone to settle the question of fact, and determine the motive by which he was actuated. Ordinarily, where the facts of a case leave room to refer an action equally either to a good motive or a bad one, the jury are bound, by a due regard to their common human nature and the rule of law, to give the good the preference. But, if, even in the face of the proof that a man had devoted his property to the payment of a just debt, the jury should still find reason to believe that a deed was made to " hinder, delay and defraud," they have the power to do so.

It comes then to this: If a jury should find the fact to be, that a deed was made by the grantor with intent "to hinder, delay and defraud creditors, the law will not presume the assent of a beneficiary to such a deed, however much it might really be for his benefit, because this would be to put it in the power of the grantor, by the aid of a legal presumption, to make valid his own fraudulent deed. Such a deed can only become valid by the actual assent of the beneficiary in some form. Until such actual assent, any creditor may levy or attach, and hold in defiance of the deed. The charge which was asked only embodies this principle, and should have been given.

The charge which was given, as we construe it, only asserts the proposition, that, if the deed of trust in favor of Mrs. Nelson was *bona fide*, and upon good consideration, it could not be affected by fraud in the other deed, if the jury should even believe the other deed to be fraudulent. There was no error in this. The wording of the charge may leave room to object that the court was assuming the facts, but it will not fairly bear that construction.

The evidence offered by the plaintiff and rejected, we conceive to have been irrelevant. That some of the negroes embraced in the deed in trust offered by the plaintiff, "were worked and used in making the crop in 1848 and 1849," of itself, proves nothing. *Non constat* but they had been hired or purchased of the beneficiaries in that deed. If the possession of them had not been changed, since the making of the deed, there was a plainer way to come at that.

For the error in refusing to charge as requested, the judgment is reversed, and the cause remanded.