### ROBINSON'S ADMR'S *vs.* ALLISON.

[ACTION ON ACCOUNT FOR WORK AND LABOR DONE.]

| 36 | 525 |
| 95 | 603 |
| 36 | 525 |
| 108 | 597 |
| 36 | 525 |
| 113 | 573 |
| 36 | 525 |
| 124 | 248 |

1. *Bill of particulars; sufficiency of, and admissibility of evidence under.*— In an action on an account for work and labor done, plaintiff's bill of particulars (Code, § 2233) containing an item for "work done on granary"; and the evidence showing that the granary had a shed on each side, one of which contained a threshing-machine, "the machinery consisting of a shaft and cog-wheels to move it, which were made fast to the building, like the running gear of a gin," and which were put up by plaintiff at the same time with the granary,—*held*, that under the liberal rules which govern the construction of bills of particulars, and in the absence of a special showing that the evidence operated a surprise, there was no error in the admission of evidence showing the work performed by plaintiff in putting up said machinery, and the value thereof.

2. *Error without injury in admission of evidence for wrong purpose.*—The admission of legal evidence, for an illegal puspose, is not a reversible error: it is the duty of the party to limit its effect by asking an appropriate charge to the jury.

[2.] *Rebutting evidence of indebtedness outside of demand sued on.*—Defendants having adduced evidence, under the plea of payment, showing sundry payments made by their intestate to plaintiff during the period covered by the account sued on; and there being no evidence that the intestate had directed the application of these payments to any particular debt, or that plaintiff had made any application,—it is competent for the plaintiff to prove, in rebuttal, that the intestate owed him other debts, to which these payments might be applied by himself or the court.

3. *Application of payments.*—If a debtor owes two distinct demands, both over-due, and makes a general payment, without giving any

directions as to its application, the law will apply it, in the absence of a specific application by the creditor, to that demand which, though not barred at the time the payment was made, has since become barred by the statute of limitations, or of non-claim. (STONE, J., *dissenting*.)

4. *Practice in allowing jury to use memoranda prepared by counsel.*—The practice of permitting the jury, on their retirement, to take with them memoranda prepared and used by counsel on the trial, should not be encouraged; but, where it appears that the memorandum simply "contained and referred to the various items of debit and credit contained in the accounts before the jury," and that the court specially instructed the jury, "that it was not to be regarded by them as evidence, and that they could not look to it for any purpose, except to aid them in referring to the various items of the accounts before them,"—the appellate court will not reverse on account of its admission.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. S. D. HALE.

THIS action was brought by Samuel H. Allison, against the administrators of William Robinson, deceased, and was commenced on the 30th July, 1856. The complaint contained a count on an open account, for work and labor done by plaintiff for defendants' intestate during the ten years between 1842 and 1852; a count on a stated account; and a count for money paid, and for work and labor done. The defendants pleaded the general issue, payment, the statutes of limitations of three and six years, the statute of non-claim, and set-off; and issue was joined on all these pleas. The defendants having required "a list of the items composing the account sued on," (Code, § 2233,) the plaintiff furnished them with a copy thereof, which is made an exhibit to the bill of exceptions, and which contained an item for "work done on granary, $135." "In the course of the examination, plaintiff proved, that the granary had a shed on each side, in one of which was a threshing-machine, which was worked by horse-power; the machinery consisting of a shaft and cog-wheels to move it, which were made fast to the building, like the running-gear of a gin. He also proved the value of the machinery, and that it was put up by him, for the defendants' intestate. The witness said, that the machinery

was part of the granary; but, on cross-examination, stated, that a granary was a place to hold grain—that a threshing-machine, or machinery, did not enter into his idea of a granary; and that he called it a part of the granary in this case, because it was in the granary, and made part of it, and was put up by plaintiff at the same time. There was no evidence as to when the threshing-machine or its running-gear was put in the granary. The defendants objected to the admission of the evidence, showing that plaintiff put up said machinery for said intestate, and its value, on the ground that a charge for such work was not embraced in said list of items, and that they were thereby surprised. The court held the evidence admissible under the item relating to the granary, and overruled the objection; to which the defendants excepted."

The plaintiff then offered in evidence the deposition of one John W. O'Neal, who testified to a conversation which had occurred between himself and the defendants' intestate, in the summer of 1852, a few days before said intestate's death; which conversation is thus stated in the witness' answer to the 4th direct interrogatory: "Mr. Robinson met me on the street one day, in Huntsville, and said, that he understood I had a negro woman and girl whom I wished to sell. I told him that I had. He then said, that he would call and examine them; and did come to my house, either that day or the next, and examined the negroes, and talked about the price. I told him, that I would take $1400 for them. *He stated to me in this conversation, that he wanted these negroes for Mr. and Mrs. Allison; that he had taken some negroes belonging to them, by request, to sell, and had sold them, or taken them himself, I am not positive which; that he was indebted to them for the negroes, (a woman, and, I think, one or two children,) and if my negroes would suit them, we would consider them sold;* that he would send Mr. Allison to see them, and that he was bound to replace the negroes which he had of them." To the italicized portion of this answer the defendants objected, on the following grounds: "that it was illegal and inadmissible; that it tended to show an indebtedness not embraced in the list of items, and not admissible under any

count of the complaint; that if it showed any liability at all, it showed a contract to buy negroes, and not to pay money; that if it showed any liability at all on the contract, either in money or negroes, it was to the plaintiff and his wife, and not to the plaintiff alone; that it did not show any breach of the intestate's contract, whether made with the plaintiff, or with him and his wife; and that plaintiff had not offered, and did not propose to offer, any evidence of a demand, or other evidence to remove its *prima-facie* inadmissibility." "The plaintiff argued, that it was an admission of indebtedness for negroes, in the sum of $1400; that the plaintiff could recover one-half of that sum; and that the admission was admissible under the count on an account stated. The court overruled the defendants' objection, and admitted the evidence; to which they excepted."

"There was evidence on the part of the defendants, tending to show payments by their intestate to plaintiff; but there was no evidence, tending to show that said intestate had directed the application of these payments to any particular debt, nor that plaintiff had done so. The defendants insisted before the jury, that some of their intestate's indebtedness to plaintiff, which the evidence tended to show, had not been presented to them, and was, therefore, barred under the plea of the statute of nonclaim. The court left it to the jury to say, from the evidence, what claims had been presented in time; and charged the jury, that the plaintiff could not recover for any claim which had not been presented. The court also charged the jury, at the request of the plaintiff, that if there were debts due from Allison to Robinson which were barred by the statute of non-claim, and also debts which were not barred, and Robinson made payments while said debts were due, without directing the application of such payments,—then the jury would consider the debts not presented in estimating Robinson's payments. The court further charged the jury, at the request of the plaintiff, that if the defendants' intestate owed debts to the plaintiff which were not presented, and debts which were presented, and made payments to plaintiff,

without directing their application, and there was no evidence of any application by the plaintiff,—then the jury might apply such payments to the debts not presented, if they thought proper to do so; provided such debts were due and owing at the time of said payments. To each of these charges the defendants excepted, and requested the court to instruct the jury, that they could not apply the payments made by said intestate to any debts due the plaintiff, unless they found the debts to be then due at the time of payment; which charge the court gave.

"After the court had charged the jury, and when the papers in the cause were about being handed to the jury, the plaintiff's counsel proposed to hand them a memorandum in writing, made by himself, and used by him during the trial, which contained and referred to the various items of debit and credit contained in the accounts before the jury. To this the defendants objected, but the court overruled their objection, and permitted the jury to take said memorandum with them; charging them specially in reference to it, that it was not to be regarded by them as evidence, and that they could not look to it for any purpose, except to aid them in referring to the various items of the different accounts before them; that they might use said memorandum for this purpose, if they thought proper, but for no other. To this also the defendants excepted."

The rulings of the court to which exceptions were reserved, are now assigned as error.

E. J. Jones, for appellants.

R. C. Brickell, *contra*.

R. W. WALKER, J.—1. In response to the defendant's demand for "the list of items composing the account," which answers to the common-law bill of particulars, (Pryor v. Johnson, 32 Ala. 27,) the plaintiff furnished an account, containing an item for "work done on granary, $135." The proof was, that the granary on which the plaintiff had worked had a shed on each side, in one of

which was a threshing-machine, "the machinery consisting of a shaft and cog-wheels to move it, which was made fast to the building, like the running-gear of a gin," and which were put up by the plaintiff at the same time with the granary. The defendant objected to evidence that the plaintiff put up "said machinery," (meaning, as we suppose, the stationary machinery, the shaft and wheel, by which the threshing-machine was impelled,) and of the value of the work, upon the ground that a charge for the same was not embraced in the list of items.

It would seem from the evidence, that the wheel and shaft were fixtures, and, therefore, part of [this particular granary, (McDaniel v. Moody, 3 St. 314; Hancock v. Jordan, 7 Ala. 450;) and according to the liberal rules which govern in the construction of bills of particulars, the admission of the evidence was not an error for which we should reverse the judgment. In respect to variance, bills of particulars are regarded with a spirit very favorable to letting in every claim under them which can be covered by any possible construction of their language. 3 Phill. Ev. (C. & H. notes,) 3d ed. p. 637; Smith v. Hicks, 5 Wend. 48; Benson v. Brown, 10 Wend. 248. It has been said, that the test of the sufficiency of a bill of particulars is, "whether it is calculated to mislead a party who knows something about the matter;" and if not so calculated, it shall be deemed sufficient, unless upon affidavit, or other satisfactory evidence, that it has operated a surprise upon the adverse party.—Harris v. Montgomery, 5 Eng. L. & Eq. 442; Tillon v. Hutchinson, 3 Green's Law, 178. Supposing a party to know something of the circumstances under which the machinery in question was erected, and of its connection with the room used as a granary, it is far from clear that he would be surprised by the evidence which was objected to. There was no special showing that the evidence was a surprise to the defendants; and in the absence of affidavits, or other evidence to that effect, we are not prepared to say that the court erred in admitting it.—See, further, Power v. Butcher, 10 Barn. & Cress. 329.

2. If the evidence of the witness O'Neal became rel-

evant for any purpose, at any stage of the cause, its admission is not an error for which we would reverse, although at the time when, and for the purpose for which it was offered, it may have been irrelevant.—King v. Pope, 28 Ala. 601; Goldsmith v. Picard, 27 Ala. 151; Johnson v. State, 29 Ala. 68. The bill of exceptions shows, that there was evidence on the part of the defendants, tending to prove payments by the intestate to the plaintiff; but there was no evidence that the intestate had directed the application of the payments to any particular debts, or that the plaintiff had made any application of them. Under these circumstances, the duty of determinining how the payments should be applied, devolved upon the court. It was, therefore, competent for the plaintiff to prove, that there were other debts to which these general payments might be applied, either by himself or by the court, besides those sued for and embraced [in the bill of particulars.—Brown v. Denison, 2 Wend. 593; Ross v. Pearson, 21 Ala. 476. The evidence of the witness did tend to establish such a debt; and as it was admissible for the purpose we have indicated, its admission for another and an improper purpose is not a reversible error. The defendants could have limited its effect, by asking the necessary instructions. Goldsmith v. Picard, 27 Ala. 151; Cook & Scott v. Parham, 24 Ala. 21.

3. Where neither party has applied the payment, but it is left to be appropriated by law, the general principle adopted by the American courts is, to apply it according to the intrinsic justice and equity of the case.—Cremer v. Higgerson, 1 Mason, 338; Callahan v. Bozeman, 21 Ala. 449; United Stats v. Wardwell, 5 Mason, 85; Seymour v. Van Slyck, 8 Wend. 403; Smith v. Lloyd, 11 Leigh, 517; Stamford Bk. v. Benedict, 15 Conn. 442; 2 Greenl. Ev. §§ 529, 533. It is upon this principle that the courts apply a payment to the debt which is most precarious. Field v. Holland, 6 Cranch, 8; Moss v. Adams, 4 Ired. Eq. 42; Blanton v. Rice, 5 Monroe, 253; 2 Greenl. Ev. § 533; 1 Am. Lead. Cases, 295. Where, at the time the payment is made, the debtor owes the creditor two de-

Robinson's Adm'rs v. Allison.

mands, both then due; and afterwards, but before the appropriation is made by the court, one of these demands is barred by the statute of limitation, or of non-claim, justice between the parties would seem to require, that the payment should be applied to the debt thus barred. See Hamner v. Rochester, 2 J. J. Marsh. 144. Indeed, the failure of the debtor to present one of his demands, as required by the statute of non-claim, when coupled with his presentation of, and commencement of suit upon the other, might, perhaps, justify a court in presuming an application of the payment by the creditor to the debt not presented. It is clear from what we have said, that there was no error in the charges given, *of which the defendants can complain.*

4. The practice of permitting the jury to take out with them memoranda prepared and used by counsel on the trial, is one which, we think, should not be encouraged by the circuit court. But the paper which was suffered to go to the jury in this case appears to have been a simple memorandum, referring to the various items of debit and credit contained in the accounts before the jury, and the court specially charged the jury, that the memorandum was not to be regarded by them as evidence, and that they could not look to it for any purpose, except to aid them in referring to the various items in the different accounts before them. We do not see how the use of the memorandum by the jury, under these restrictions, could have injured the defendants; and we will not reverse for such a cause.

Judgment affirmed.

STONE, J., dissents on the 3d point.