THE FIRST NATIONAL BANK OF EMPORIA V. RIDENOUR,
BAKER & CO. *et al.*

1. CHATTEL MORTGAGE—*Assent of Creditor—Presumption.* The assent
of a creditor to a chattel mortgage executed in good faith, of which
he is the beneficiary, will be presumed, although it was executed and
filed without notice to him and without knowledge, and such accept-
ance will relate back to the day of filing.

2. PREFERENCE OF CREDITORS—*Chattel Mortgage, Not Void.* If a chat-
tel mortgage is given by an insolvent debtor to a creditor in good
faith to pay a *bona fide* debt, although the giving of such a mortgage
will have the effect to hinder and delay the other creditors in the col-
lection of their claims, and may, by the exhaustion of all the prop-
erty of the debtor to pay the honest debt of the preferred creditor,
absolutely prevent the other creditors from collecting any part of
their claims, such mortgage is not fraudulent or void merely because
of such unfortunate results to the creditor not preferred.

### *Motion for Rehearing.*

THE facts are sufficiently stated in the opinion, *infra,* filed
on July 9, 1891.

*Sluss & Stanley,* for plaintiff in error.

*Kellogg & Sedgwick,* and *Brooks & Coffin,* for defendants in
error.

The opinion of the court was delivered by

HORTON, C. J.: It was declared in the former opinion
handed down, (ante, p. 707,) among other things, that—

"The assent of the beneficiary in the deed may be given
any time after the deed is executed, and, in the absence of
proof to the contrary, will always be presumed. (*Field v. Ar-
rowsmith,* 3 Humph. 442.)   'It will be presumed, on the part
of the beneficiaries under a deed of trust, in the absence of
proof to the contrary, that each accepts the provisions made
for his benefit, and such acceptance may be given at any time
after the conveyance is made, unless renounced or waived;'
and such acceptance in fact will relate back to the day of
registration. (*Furman v. Fisher,* 4 Coldw. 626.)'"

Upon this declaration of law we held that the chattel mort-

gage of $10,000, executed by Messrs. Lovejoy & Glasscock on the 30th of August, 1886, to secure the indebtedness due the First National Bank of Emporia, was a prior lien to the attachments on the goods of the firm made by their creditors several days after the filing of the mortgage, and upon such conclusion, we reversed the judgment of the trial court, and directed judgment accordingly. This declaration of law and the reversal of the judgment of the trial court were vigorously assailed at the rehearing, upon the ground that the chattel mortgage was executed by the firm of Lovejoy & Glasscock with the intent to hinder, delay and defraud their creditors, and therefore that it had no force or effect in favor of the bank until the bank actually assented to or accepted the mortgage; and upon this it is maintained, even if the chattel mortgage was valid between the parties, that it had no validity or force as to the attaching creditors until after the assent or acceptance of the bank, which it is alleged was subsequent to the levy of the attachments. Therefore it is urged that in any event the attachment liens were prior to the chattel mortgage lien. We concede, as stated by Burrill on Assignments, that the assent of a creditor to a void or fraudulent assignment or chattel mortgage must be actually given, and will not be presumed. (Fifth ed., § 295, p. 444.) In *Benning v. Nelson*, 23 Ala. 801, it is said by Phelan, J., that—

"If a jury should find the fact to be that a deed was made by the grantor with intent 'to hinder, delay and defraud creditors,' the law will not presume the assent of a beneficiary to such a deed, however much it might really be for his benefit, because this would be to put it in the power of the grantor, by the aid of a legal presumption, to make valid his own fraudulent deed. Such a deed can only become valid by the actual assent of the beneficiary in some form. Until such actual assent, any creditor may levy or attach and hold in defiance of the deed."

See, also, *Townsend v. Harwell*, 18 Ala. 301; *Stewart v. Spencer*, 1 Curtis, 157; *Ashley v. Robinson*, 29 Ala. 112; *Baldwin v. Peet*, 22 Tex. 708.

We do not construe the findings of the trial court, however, when considered together, as showing that the chattel mortgage to the First National Bank was given to hinder, delay and defraud the creditors of the firm of Lovejoy & Glasscock. It is true that the trial court made such a finding, or rather made such a general conclusion of law; but this general statement or conclusion is greatly modified by the further findings of the trial court, which stated that the First National Bank had no knowledge or notice of any intent upon the part of the firm of Lovejoy & Glasscock to hinder, delay and defraud its creditors, and did not participate in any such fraud or intent, and that the value of the property embraced in the chattel mortgage was not in excess of the debts due to the First National Bank from the firm of Lovejoy & Glasscock, as described in the mortgage. From all the findings of fact, we must construe that the finding or conclusion of the trial court, that the chattel mortgage "was given to hinder, delay and defraud the creditors of the firm of Lovejoy & Glasscock," meant that, as the effect of the mortgage was to hinder and delay all the other creditors of the firm excepting the First National Bank of Emporia, such chattel mortgage was given to defraud. Every preference by an insolvent debtor to one creditor over another tends to hinder and delay the creditor not secured or paid, but we have decided time and again that "a debtor, even in failing circumstances, may prefer creditors if the same is done in good faith; and this, not only in the form of actual payment of money to the particular creditors preferred, but also in the form of the sale or appropriation of the property, or the giving of chattel mortgages to such creditors." (*Tootle v. Coldwell*, 30 Kas. 125; *Bailey v. Manufacturing Co.*, 32 id. 73.) It is well settled that an insolvent, as long as he retains a *jus disponendi* of his property, may appropriate it to the payment of his debts, and may prefer creditors. He may use all his property this way, or he may so use a part, and make a general assignment of the remainder. (*Lampson v. Arnold*, 19 Iowa, 479; *Dodd v. Hills*,

21 Kas. 707; *Randall v. Shaw*, 28 id. 419. See also *National Bank v. Croco*, ante, p. 620; same case, 26 Pac. Rep. 843, and the cases there cited.)

It is true that the chattel mortgage was made to the national bank while the firm of Lovejoy & Glasscock was insolvent, and that such preference or chattel mortgage operated to hinder and delay the other creditors in the collection of their claims; and we may further say from the findings, that it was the intention of the firm of Lovejoy & Glasscock to prefer and pay the claim of the First National Bank in preference to the claims of the other creditors, even if such payment exhausted all of their property; but all of these things, under the frequent prior decisions of this court, do not affect the validity of the chattel mortgage, as it was executed in good faith to pay a *bona fide* debt, and the value of the property mortgaged was not in excess of the debt described therein and actually due from the firm of Lovejoy & Glasscock to the bank. Under these circumstances, as there was no fraud in fact within the prior rulings of this court, we repeat what we said before, that the assent of the First National Bank of Emporia to the chattel mortgage, although given after it was executed and even after the levy of the attachments, must be presumed, and such assent or acceptance in fact will relate back to the day of the filing of the mortgage. This is the law where the chattel mortgage is not fraudulent or void. But opposing counsel say, that any deed, any chattel mortgage or any assignment may be fraudulent, although made in consideration of an honest debt, and a large number of authorities are cited supporting this view. We concur in what is said in the authorities upon this matter, but hold that the findings of fact do not show that the chattel mortgage or transfer is fraudulent. In the cases where the transfers were fraudulent, but the considerations on honest debts, it appeared that the deeds or conveyances were made for the ease and favor of the debtor, or for some other purpose to aid and assist the debtor, rather than to protect and prefer the honest creditor.

2. Preference of creditors— chattel mortgage, not void.

1. Chattel mortgage—assent of creditor— presumption.

Thus, it is said in *Devries v. Phillips*, 63 N. C. 53: "It is well settled, that a conveyance to secure a *bona fide* debt, or for a valuable consideration, will be fraudulent if made for the ease and favor of the debtor."

In *Shelley v. Boothe*, 73 Mo. 74, it was ruled:

"That if it appeared from the circumstances attending the transaction that the preferred creditor was not acting from an honest purpose to secure the payment of his own debt, but from a desire to aid the debtor in defeating other creditors, or in covering up his property, or in giving him a secret interest therein, or in locking it up for the debtor's own use and benefit, he will not be protected, and the sale would be fraudulent as to other creditors, because in such cases the fraud of the debtor becomes the fraud of the preferred creditor because of his participancy therein."

In *Smith v. Schwed*, 9 Fed. Rep. 483, it was decided "that if the purpose of the preferred creditor is not to secure his debt, but to help the debtor cover up his property, he cannot shield himself by showing that his debt was *bona fide*."

In *Drury v. Cross*, 7 Wall. 299, the preferred creditors unlawfully combined together to raise the decree to an extent which prevented all fair competition at the sale of the property, and therefore, in that case, they were not protected. *James v. Railroad Co.*, 6 Wall. 752, was a similar case of actual fraud by certain parties to prevent fair competition at a sale.

In the case of *Cox v. Miller*, 54 Tex. 16, there is a discussion of whether the facts in that case show that the mortgage was given to secure a *bona fide* debt, or whether it was simply a colorable pretense resorted to for the purpose of covering up the property. The facts were set forth, among which were, that the property conveyed was greatly in excess of the pretended debt, and that the security was only a part consideration for the conveyance, and that the motive of the conveyance was to transfer to the grantee a large amount of property under the false claim that it really belonged to her, and for the purpose of putting it beyond the reach of creditors.

In *Thompson v. Furr*, 57 Miss. 478, it appeared that there was a secret agreement between the debtor and creditor se-

cured by a mortgage, that a one-half interest in the property conveyed was to be held by a secret trust for the benefit of the debtor, and was not to apply to the payment of the debt; and the consideration of the conveyance was falsely set at about double the actual debt for the purpose of misleading the creditors, which of course would be a fraud upon the creditors in fact; and wherever there is a fraud in fact, notwithstanding a *bona fide* debt may be incidentally secured, it vitiates the transaction.

These and many other cases which are cited show that where the conveyance to a creditor having a *bona fide* claim is in excess of the actual debt, or is given to favor the debtor, or to merely cover up the property from other creditors, or to prevent a fair sale of the property, then the transaction, sale or conveyance, so fraudulently made to the creditor having the honest debt, is void, at least as to the creditors not preferred. (See *Wallach v. Wylie*, 28 Kas. 138; *Winstead v. Hulme*, 32 id. 568.) But in this case, the findings, taken as a whole, bear no such interpretation. The chattel mortgage, according to the findings, was not given to favor the insolvent firm, but to protect honest debts due the bank. The mortgage was not in excess of the debts secured, or given to cover up property, or to prevent a fair sale thereof.

The rehearing will be denied.

All the Justices concurring.