# Nelms *et al. v.* Steiner Bros.

*Action of Trespass for Wrongful Levy upon and Taking and Carrying Away of Property.*

1. *Action of trespass; when taking justified under process, the writ and the indorsement thereon admissible is evidence.*—In an action of trespass against a sheriff and others for the alleged wrongful taking and carrying away of personal property, where the taking is justified under a writ of attachment, the writ itself, with the indorsements thereon, showing the levy upon and sale of the goods by the sheriff, are admissible in evidence, without the introduction of the entire record in the attachment suit.

2. *Same; when statement of accounts between plaintiffs and attachment debtor inadmissible.*—In an action of trespass for the alleged wrongful taking of property under a writ of attachment, where the plaintiffs claim title under a bill of sale executed by their debtor, which was assailed as fraudulent by the attaching creditor, the statement of accounts by the plaintiffs against their said debtor are inadmissible; such accounts not being of themselves distinct, independent evidence of indebtedness to plaintiff.

3. *Same; fraudulent conveyance; fact of debtor purchasing at sale under attachment for his grantee admissible in evidence.*—In an action of trespass for the alleged wrongful taking and sale of property under a writ of attachment, where the plaintiff claims title under a bill of sale, which the attaching creditors attack as fraudulent as against them, and it is shown that business relations existed for a long time between the plaintiff and his vendor, which extended to a time after the alleged fraudulent sale, the fact that said vendor, at the sale of the property under the writ of attachment, purchased a part of it for the plaintiff, the character of the property purchased and the price paid for it, are admissible in evidence.

4. *Same; cross-examination; improper question.*—In an action of trespass for the alleged wrongful taking and sale of personal property under a writ of attachment, where the issue formed is, whether the sale to the plaintiff was in fraud of his vendor's creditors, it is improper to ask the plaintiff, as a witness on cross-examination, whether he had heard one of his witnesses testifying to certain facts, which were different from the facts testified to by the plaintiff himself; since, if he heard it, his silence at the time could not be construed into an admission of its truth, nor was the plaintiff hindered from explaining or contradicting it if necessary.

5. *Same; fraudulent conveyance; validity of sale not affected by subsequent, independent, fraudulent transfer of property.*—When a sale by a debtor to a creditor is attacked as being fraudulent against other creditors of said debtor, and it is shown that subsequent to said sale the vendor transferred to the plaintiff certain mortgages, fraud in the subsequent transaction can not affect the sale to the plaintiff, if such transfer, without regard to the time of its occurrence, is shown to be an independent, distinct, substantive transaction.

6. *Failure to introduce witness does not justify an unfavorable inference.*—The failure of a party to a suit to introduce a witness, whatever may be the relations between them, who is equally accessible to both the parties litigant, and equally under the legal control of either party, raises no unfavorable inference, and is not a circumstance to be considered against him; and charges which instruct the jury to the contrary are properly refused.

7. *Fraudulent conveyance; erroneous charge in reference thereto.*—On an issue of fraud as against creditors in a transfer by a debtor to another creditor, it is error, as exacting a higher degree of proof than the law requires, to instruct the jury that "the court never strives to force conclusions of fraud," and if the facts were "susceptible of an honest intent," and without fraud so far as the vendee was concerned, and there was no reservation of benefit to the vendor, and the vendee had a *bona fide* debt, and received no more goods than was sufficient to pay it, then the transaction was legal.—(*Claflin v. Rodenberg*, 101 Ala. 213, overruled upon this question.)

8. *Motion for a new trial; how considered and revised.*—An order refusing a motion for a new trial, based upon the ground that the evi-

[Nelms *et al.* v. Steiner Bros.]

dence was not sufficient to support a verdict, and that the verdict was contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumption of its correctness a preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. JOHN MOORE.

This was an action brought by Steiner Bros. against the appellants, to recover damages for taking and carrying away a stock of goods, wares and merchandise and other property in and near the storehouse at Hamburg Station, in Perry county, then occupied by the plaintiffs, but shortly before that time occupied by one I. L. Levy. The suit was commenced on the fifth day of July, 1892. The defendants, on the 29th day of August, 1892, jointly filed two pleas. The first was a general plea of not guilty; the second was a plea of justification under process. This latter plea, in substance, states that on the 23d day of March, 1892, two writs of attachment were issued by the Hon. John Moore, Judge of the Fourth Judicial Circuit, one at the suit of Simon Maas, and the other at the suit of Maas & Schwarz, and both against Ignatz L. Levy, and both returnable to the next term of the circuit court of Perry county; that these attachments came to the hands of Samuel A. Nelms, one of the defendants, who was then sheriff of Perry county, to be executed and returned according to law, and that afterwards, on the 25th day of March, 1892, Samuel A. Nelms, sheriff as aforesaid, under and by virtue of said attachments, levied upon and took into his possession the stock of goods, wares and merchandise and other property in the plaintiff's complaint mentioned, as the property of said Ignatz L. Levy; that said sheriff duly returned said writs of attachment to the said circuit court; and the plea avers that the said stock of goods, wares and merchandise and other property mentioned in the plaintiff's complaint was the property of said Ignatz L. Levy, defendant in said attachments named, and were liable to said attachments. The plaintiffs took issue on each of said pleas, and the case was tried at the spring term of said circuit court, in the year 1894 on said issues.

On the trial of the cause, the plaintiffs offered to read the writ of attachment issued at the suit of Maas &

Schwarz against Ignatz L. Levy, with the indorsements and sheriff's return thereon. The defendants objected to the reading of said writ of attachment, with the indorsements and sheriff's return thereon, on the ground that said writ of attachment was only a part of the record in that cause. The court overruled this objection, and the said attachment and the indorsements and sheriff's return thereon were read as evidence. To this ruling the defendants duly excepted. The plaintiffs thereupon read as evidence, against the defendants' objection and exception, the writ of attachment, with the indorsement and sheriff's return thereon, which was issued at the suit of Simon Maas against Ignatz L. Levy.

The testimony for the plaintiffs was to the effect that on March 17, 1892, I. L. Levy, who was a merchant doing business at Hamburg Station, in Perry county, was indebted to the plaintiffs, Steiner Bros., in the sum of $2,673.03, and that on the aforementioned date, the said Levy, being in Birmingham, executed and delivered to Steiner Bros. the following instrument: "Received of Burghard Steiner and Sigfried Steiner, as partners under the firm name of Steiner Brothers, twenty-six hundred and seventy-three 03-100 dollars in consideration of which I herely grant, bargain, sell and deliver to them all of my certain stock of goods, wares and general merchandise now in the storehouse occupied by me at Hamburg Station, in Perry county, Alabama. Also one iron safe, all show cases, desks, stoves and all other furniture and fixtures in said store, one pair of platform scales, 2 pairs cotton seed scales, one cart, one buggy, four hundred bushels of corn and cotton seed, houses on right of way of the C. S. M. R. R. Co. Witness my hand and seal this the 17th day of March, 1892. [Signed.]    I. L. Levy."

This bill of sale was attested by two witnesses, and its execution being proven by one of the attesting witnesses, it was introduced in evidence.

The testimony for the plaintiffs further tended to show that the indebtedness of Levy to them was the result of business relations existing between them since 1888, and was evidenced by notes and accounts ; that in the execution of the bill of sale there was no reservation of benefit to Levy, and that the property conveyed was reasonably worth the amount expressed in the bill of

sale, but was worth no more; that from time to time during the business transactions between Levy and the plaintiffs, the plaintiffs stated their accounts against Levy, and at the time of the making of the bill of sale, the amount expressed was the amount shown to be due the plaintiffs by Levy's account with them. It was further shown that upon the execution of this bill of sale, the plaintiffs sent their agent and representative, one Rudulph, to Hamburg Station to take charge of the property; that Rudulph, with the assistance of two clerks, whom he employed for the plaintiffs, made an inventory of the stock of goods, and that this inventory was sent to the plaintiffs in Birmingham; that while Rudulph, as the agent of the plaintiffs, was in possession of the stock of goods, Maas & Schwarz and one Simon Maas, each, sued out a writ of attachment against I. L. Levy, on March 23, 1892, which writs of attachment were levied upon the property on March 25, 1892; that under these attachments the sheriff took possession of the property which was then in the custody of Rudulph as plaintiffs' agent, and sold the same.

Upon the cross-examination of B. Steiner, one of the plaintiffs, he testified that on March 24, 1892, Steiner Bros. obtained a large number of chattel mortgages from I. L. Levy, to indemnify them against their liability as sureties on Levy's debt to Lehman, Durr & Co., of which debt Steiner Bros. had guaranteed the payment.

There was evidence in behalf of the defendants tending to show that there was collusion between Levy and the plaintiffs, by which their goods and other property were disposed of to the hindrance and defrauding of their other creditors, and it was shown that the levy of the attachments, which are complained of in this suit, was under due process of law; the facts in this regard, substantiating the averments of the defendants' special plea.

After the testimony of B. Steiner as a witness, to the fact that the account of Steiner Bros. against Levy was stated at different times, the bill of exceptions then contains the following recital: "The said B. Steiner then produced and offered to read in evidence the statement of an account between I. L. Levy and Steiner Brothers, dated May 1st, 1891, to which account the defendant objected on the ground that it was a mere writing of

[Nelms *et al.* v. Steiner Bros.]

the plaintiffs. The court overruled the objection, and defendants excepted, and said account was read in evidence.

"And the said B. Steiner produced another statement of an account of I. L. Levy with Steiner Brothers, dated Jan. 4th, 1892, and offered to read said account in evidence. Defendants objected to said account being read in evidence, the court overruled the objection, and defendants excepted, and the said account was then read in evidence."

Upon the cross-examination of B. Steiner, the defendants' counsel handed him the inventory which the witness Rudulph had testified he made which had been produced and read in evidence, and said Steiner was then asked the following question: "Did you not hear Mr. Rudulph testify that he sent that book by express just as it is?" The plaintiffs objected to this question, which objection the court sustained, and the defendants duly excepted. It had been previously shown by the testimony of this witness that this inventory had been changed after it had been sent by Rudulph to Steiner Bros.

The defendant introduced in evidence a deed from I. L. Levy to Steiner Bros. conveying three acres of land at Hamburg Station with the storehouses and dwelling thereon, and six acres of land in the village, near by, which deed expressed a consideration of one thousand dollars, and was dated January 25, 1892, but was not filed for record until March 21, 1892.

Samuel A. Nelms was then sworn and examined as a witness for the defendants. He testified about levying the attachments in favor of Maas & Schwarz and of Simon Maas on the stock of goods sued for, and he testified about the new goods. He also testified that as sheriff he sold the property levied on for $2,032.95, including the stock of goods, and that the stock of goods alone sold for $1,350, and it was worth about that sum. He also testified that I. L. Levy was present at the sale made by him as sheriff of said property levied on, at Hamburg Station; that at said sale I. L. Levy bid for some of the property sold, in the name of the plaintiffs; that he bought some of the property sold by the sheriff for and in the name of the plaintiffs; that said I. L. Levy, at said sale, bought a strawberry roan mare for

and in the name of the plaintiffs; that said I. L. Levy, at said sale, bought an old desk with a large number of papers in it, for and in the name of the plaintiffs; that said desk was worth five or ten dollars, but said Levy bought said desk at the price of forty dollars; that said I. L. Levy bought the articles enumerated above at said sale and paid for them in the name of Steiner Bros.

The plaintiffs then moved to exclude from the jury all that was testified to by said sheriff, Samuel A. Nelms, about or concerning I. L. Levy bidding for or buying or paying for property in the name of the plaintiffs sold by the sheriff at said sale at Hamburg Station. The said motion was sustained by the court, and to this action of the court the defendants excepted. Thereupon the defendants excepted separately and severally to the exclusion from the jury by the court of each of the parts of the testimony of said Nelms, as above stated.

Upon the introduction of all the evidence, the court at the request of the plaintiffs, gave to the jury, among others, the following written charges, to the giving of each of which the defendants separately excepted: (1.) "If the jury believe from the evidence that the transfer of chattel mortgages from Levy was not a part of the transaction in controversy, and that it had no relation thereto, then a reservation of a benefit to Levy, if such there was in the chattel mortgages, or their proceeds, could not be visited upon the transaction in controversy." (7.) "The fact that I. L. Levy was not introduced as a witness can not be considered against the plaintiffs in this case." (8.) "The court never strives to force conclusions of fraud, and if the facts in evidence in this case are susceptible of an honest intent and without fraud, so far as Steiner Brothers are concerned, and that there was no reservation or benefit to I. L. Levy in the purchase of the property in controversy, or any of it, and that Steiner Brothers had a *bona fide* debt, and that they received no more goods and property than were sufficient to pay their debt, then the transaction is impregnable and is legal." (10.) "In this action the failure of the plaintiffs to introduce the debtor, I. L. Levy as witness for the plaintiffs, he being present in court, is not a suspicious circumstance against the validity of the transaction, and does not authorize any presumption against plaintiffs."

[Nelms *et al.* v. Steiner Bros.]

There were jury and verdict for the plaintiffs, assessing their damages at $2,488.01. The defendants thereupon made a motion for a new trial, upon the grounds that the verdict of the jury was contrary to the evidence and to the law, and contrary to the charge of the court, and that the court misdirected the jury in the charges given at the request of the plaintiffs. This motion was overruled, and the defendants duly excepted. The defendants appeal, and assign as error the many rulings of the trial court to which exceptions were reserved.

PETTUS & PETTUS, for appellant.—1. When a transaction, by which one creditor purchases property from an insolvent debtor in extinguishment of his debt, is assailed as fraudulent by another existing creditor, it is incumbent on the grantee to establish the justice and amount of the indebtedness and the adequacy of the consideration.—*Page v. Francis*, 97 Ala. 380; *Moore v. Penn*, 95 Ala. 200; *Robinson v. Moseley*, 93 Ala. 70; *Caldwell v. Pollak*, 91 Ala. 358; *Mobile Savings Bank v. McDonnell*, 89 Ala. 445.

2. Fraud can generally be established only by facts and circumstances which tend directly or indirectly to indicate its existence.—Waite on Fraudulent Conveyances and Creditors' Bills, pp. 116 and 117.

3. In the trial of an issue of this character it has been repeatedly held that the inquiry should be directed, first, to the *bona fides* of the debt; second, the sufficiency of the consideration; and third, whether there was a reservation of benefit to the debtor.—*Steiner Bros. v. Lowery & Co.*, 98 Ala. 211; *Pollock v. Meyer*, 96 Ala. 172; *Hodges v. Coleman*, 76 Ala. 103.

4. In an action to set aside a conveyance as in fraud of creditors, the burden of showing the valuable consideration for the conveyance is on the purchaser.—*Moog v. Farley*, 79 Ala. 246; *Murray v. Heard*, 103 Ala. 400.

5. The whole record which concerns the matter in question ought to be produced; not a part of it merely.—1 Greenleaf on Evidence, § 511.

6. When between the grantee and an existing creditor a controversy arises as to the validity of a sale or conveyance, it has long been the settled rule of this State that the recital of the consideration in a note or in a conveyance is the mere declaration or admission of the

grantor, and is not evidence against the creditor.—*Hubbard v. Allen*, 59 Ala. 296, and cases cited.

7.   In a controversy between the grantee and an existing creditor of an insolvent debtor as to the validity of the purchase, and the grantee only is examined to prove the consideration of his purchase, and the evidence of the grantee leaves unexplained and uncertain a large portion of the consideration of the debt, and the grantor is in court, the failure of the grantee to call the grantor as a witness to explain the matters left unexplained, is a circumstance for the consideration of the jury and the court.—*Pollak v. Harmon*, 94 Ala. 420 ; *Hubbard v. Allen*, 59 Ala. on page 300, where the court comments on the fact that the grantor alone was examined, but his daughter, the grantee, was not.

8.   On questions of intent to defraud, other similar acts of fraud between the same parties, at or about the same time, are admissible evidence.—1 Greenleaf on Evidence, § 53, and note B ; *Cary v. Hotailing*, 1 Hill, (N. Y.) 311, and cases cited ; *Castle v. Bullard*, 23 Howard, (U. S.), 172-185-6.

CABANISS & WEAKLEY, *contra*.—1. The objection to the introduction of the accounts was general, specifying no grounds, and, therefore, the trial court will not be put in error for overruling such objection.—*White v. Craft*, 91 Ala. 139 ; *Bates v. Morris*, 101 Ala. 282 ; *Miller v. State*, 107 Ala. 40.

2.   There was no error in the court excluding the testimony that Levy, the vendor, was present at the sale under the writ of attachment and purchased a part of the goods for the plaintiff.   The only question presented by the ruling and the exception is, whether it was competent for the defendants to prove acts of I. L. Levy, the vendor, with which it was not shown the plaintiffs had any connection, and which it was not shown they knew of or authorized, because the motion was directed simply and solely to the exclusion of what Nelms testified ''about or concerning I. L. Levy bidding for or buying or paying for property in the name of the plaintiffs,'' and it was this motion alone which the court sustained.

3.   When fraud *vel non* between two persons is in issue; their relative position ''a reasonable time before, at, and a reasonable time after the time at which the act

of fraud is alleged to have been committed, may be shown. The difficulty here is that the excluded evidence did not show the "relative position" of the parties—the position of Levy as related to Steiner; it showed merely the separate, independent, and for aught that was shown, the wholly unauthorized act of Levy. "The rule is well settled that the declarations or conduct of one professing to act as the agent of another can not be received as evidence against the principal without independent proof of his authority."—*Postal Tel. Co. v. Lenoir*, 107 Ala. 640, citing *Home Protection Co. v. Whidden*, 103 Ala. 203; *Buist v. Guice*, 96 Ala. 255; *Talladega Ins. Co. v. Peacock*, 67 Ala. 253; *Galbreath v. Cole*, 61 Ala. 139. We respectfully submit the previous decisions of this court demonstrate the inadmissibility of this character of evidence in cases like this.—*Jones v. Norris*, 2 Ala. 526; *Garner v. Bridges*, 38 Ala. 276; *Harris v. Russell*, 93 Ala. 59; *Strong v. Brewer*, 17 Ala. 706; *Eureka Co. v. Edwards*, 71 Ala. 248; *Murphy v. Butler*, 75 Ala. 381. The evidence having a tendency to shed a light upon the issue of fraud is admissible. But aside from all this, we fail to see what light was shed upon the issues by the excluded evidence. These issues were clearly defined. The sale was public, conducted by the sheriff, and we fail to see wherein what occurred there, done by the vendor alone, in any way tended to show whether the consideration of a sale by Levy of that property at a prior date was adequate, whether the sale was *bona fide*, or a benefit reserved. The facts excluded were too remote to have any relevancy to the inquiry. We submit the ruling the circuit court made in response to the motion of the plaintiffs was free from error.—*New York & Hav. Cigar Co. v. Bernheim*, 81 Ala. 138.

4. There was no error committed by the court in giving the charges requested by the plaintiffs. The 7th and 10th charges asserted correct propositions, as has been repeatedly held by the decisions of this court. *Pollak v. Harmon*, 94 Ala. 420; *Bates v. Morris*, 101 Ala. 282. The 8th charge was a substantial copy of the instruction approved in the case of *Claflin v. Rodenberg*, 101 Ala. 213. This case is distinguishable from the cases of *Skipper v. Reeves*, 93 Ala. 332; *Smith v. Kaufman*, 94 Ala. 364; *Pollak v. Searcy*, 84 Ala. 259. In each of the three cases just mentioned the charge con-

demned was *wholly* and *solely* declaratory of a rule for weighing evidence ; the charges did not lay down a rule as to what would or would not constitute fraud. The vice of the charges consisted in their invasion of the province of the jury. Besides, *Skipper v. Reeves* and *Smith v. Kaufman* were each cases of purchases upon a new consideration, wherein the issues are very different from those arising in a case like this. This difference is noted by Stone, C. J., in *Pollak v. Searcy, supra,* and also in *Carter v. Coleman,* 84 Ala. 256. In the latter he says : "A sale in payment of debts stands on principles entirely different. So long as the law allows a failing debtor to prefer some of his creditors at the expense of others, it permits, if it does not invite, a race of diligence. The points of inquiry in such transactions are the *bona fides* and sufficiency of the consideration, and the question of benefit, open or secret, reserved or secured to the paying debtor. If the contract be unassailable at these points of attack it is impregnable." Now it may be admitted that if the charge given on the trial had stopped with the word "concerned," so as to have been merely a charge as to weighing evidence, it would have been invasive of the jury's province. But, *unlike the charge condemned in the three cases cited by the court,* it did not stop there. The charge hypothesized a finding in favor of the plaintiffs upon the issues in the case, which issues, if so found in their favor, absolutely entitled them to a verdict, no matter what Levy's intent or their intent was.—*Carter v. Coleman,* 84 Ala. 256 ; *Pollak v. Searcy,* 84 Ala. 259.

BRICKELL, C. J.—1. The objections specified to the introduction in evidence of the attachments, of the endorsements thereon of the levy upon and sale of the goods, (the taking and conversion of which, constitute the gravamen of the action), made by the sheriff, a party defendant, was, that the attachment was a part only of the record. Admitting this to be true, we do not perceive the necessity for the introduction of any other part of the record by the plaintiffs. If there were other parts, which would have lessened the force of these endorsements as evidence, that the goods had been taken and by sale converted by the sheriff, the defendants could have introduced them. There is no presumption

that there was not continuous prosecution of the attachment, or that the other parts of the record would have neutralized or qualified the force and effect of these endorsements as evidence for the purposes for which they were introduced. When proceedings have ripened into a final judgment, and the judgment is relied upon as an estoppel, or as a bar, it may be true, that the whole record must be produced:—Freeman on Judgments, § 407, 1 Green. Ev., § 511. It is obvious, the objection finds no support in this principle.

2. The accounts against Levy, produced by the plaintiff Steiner, should not have been received as evidence. In *Grant v. Cole*, 8 Ala. 519, an action upon an open account for goods sold and delivered, the trial court permitted the account, the list of items, to go in evidence. The court said: "The 'account,' by which we understand the paper upon which the items composing the account were stated, was not testimony for the jury for any purpose, as it is the mere written declaration of the party himself." Memoranda of this character, prepared by the party for the purposes, or in the course of a trial, is not a species of evidence to be encouraged; and if admitted, to avoid misleading the jury, would necessitate very careful, precise instructions, that they were not in themselves evidence, and that they must not be so regarded, or looked to for any other purpose than reference to the items, and the comparison of them with the evidence having a tendency to support them; they are not of themselves distinct, independent evidence.—*Robinson v. Allison*, 36 Ala. 525.

3. In all controversies involving questions of fraud, a wide range of evidence is necessarily allowed, for it is but seldom, that fraud can be the subject of direct, positive evidence; usually it is the matter of inference from facts and circumstances, naturally and logically indicating its existence. In the case of *Snodgrass v. Br. Bank of Decatur*, 25 Ala. 174, it was said by GOLDTHWAITE, J.: "As a general rule, great latitude is allowed in the range of the evidence, when the question of fraud is involved. It is indispensable to truth and justice that it should be so; for it is hardly ever possible to prove fraud except by a comprehensive and comparative view of the actions of the party to whom the fraud is imputed, and his relative position a reasonable time before, at, and a reasonable

time after, the time at which the act of fraud is alleged to have been committed.'' In view of the long, continuous business relations between the vendor and the vendee, existing before, and which seem to have existed to some extent after the alleged sale, we are of opinion, the court below erred in the rejection of evidence, that the vendor was present at the sale made by the sheriff under the attachments, purchased, for and in the name of the vendees, parts of the property sold, the character of the property purchased, the prices bid for it, and the payment of the bids in the name of the vendees. The probative force of the facts is not the matter of inquiry; that is for the consideration of the jury; the relevancy and sufficiency of evidence are distinct inquiries. The test is, whether these facts had any tendency to throw light upon the transaction. If they had, if directly or indirectly they bore upon the inquiry into the fairness and good faith of the sale, their admissibility is dependent not upon their *force* but upon their *bearing*.—Bump on Fraud. Convey., §§ 590-91. There is, perhaps, in civil cases, triable by jury, no matter of more difficulty, presented to the court, than to draw the precise line, which, upon an issue of fraud, separates facts or circumstances which are relevant, from those which are irrelevant. Each case is controlled, in a large degree, by its own peculiar facts and circumstances. It is quite an error, too often pressed upon the court for consideration, that each fact or circumstance, or item, or particle of evidence, must be tested by its own intrinsic force, without regard to its relation to, or connection with, other evidence in the case; and if of itself it does not prove fraud, it should be excluded. It is the *bearing*, not the independent force of the particular fact or circumstance, upon which its relevancy depends. The whole theory and reason of the rule which allows a wide range, or large latitude of evidence upon an issue of fraud, is, as is said in *B. & O. R. R. Co. v. Hoge,* 34 Penn. St. 221, because fraud, ''is a subtle element, and is to be traced out, if at all, by the small *indices* discoverable by the wayside where it travels; and, to enable courts and juries to detect it, they must in most cases, aggregate many small items, before the true features of it are discernible.''

4. Great latitude of interrogation on cross-examina-

[Nelms *et al.* v. Steiner Bros.]

tion is permitted, and there is much of difficulty in determining its limits. Ordinarily, it may not be extended to immaterial, or mere collateral facts, not even for the purpose of probing the memory, or contradicting the witness. Whether the plaintiff under cross-examination, heard the testimony of Rudulph in reference to the condition of the inventory, seems wholly immaterial and irrelevant. If he heard it, his silence at the time could not be construed into an admission of its truth, nor did it hinder him from explaining or contradicting it, if explanation or contradiction was necessary. As a fact or circumstance having a tendency to show a fabrication of evidence by the plaintiff, as is insisted by appellants, it was too remote.

5. The remaining assignments of error relate to instructions given the jury, at the instance of the plaintiffs; and observing the practice which has long prevailed in this court, we will consider only such of the assignments, as are insisted on in the argument of the counsel. The first of these, relates to the first of the instructions. When read in the light of the evidence, fairly interpreted, the instruction asserts the legal proposition, that if fraud infected the transfer of the chattel mortgages, and the transfer was a subsequent transaction, independent of, and wholly disconnected from the sale of the goods, the vice of the transfer could not be visited on the sale, if that, in itself, was free from fraud. Adopting this interpretation, the instruction finds support in the cases of *Johnston v. Br. Bank of Montgomery*, 7 Ala. 379; *Buford v. Shannon*, 95 Ala. 205. The doctrine is, however, that evidence of other transactions which are fraudulent, and which are in point of time cotemporaneous, or nearly so, with the transfer assailed, is admissible. Their connection, is matter for the consideration of the jury, when they are all between the same parties; and they may shed light upon the intent of the parties.—*Cummings v. McCullough*, 5 Ala. 324; *Dent v. Portwood*, 21 Ala. 588; *Benning v. Nelson*, 23 Ala. 801; Bump on Fraud. Convey., (4th ed.), § 545. The force of the evidence, depends upon the probable connection of the several transfers or transactions; and this depends largely upon the nearness in point of time of their occurrence, for if they are remote in point of time, the remoteness disconnects them, as was the case in *Johnston v. Br. Bank Montgomery*,

*supra*. Without regard to the time of the occurrence, if they are shown to be independent, distinct, substantive transactions, the fraud of the one cannot be visited on the other, shown to be free from fraud.

6. The seventh and tenth instructions assert no more, than that the failure of the plaintiffs to introduce the vendor Levy as a witness, was not a circumstance to be considered against them. It must be regarded as the settled doctrine of this court, that the failure of a party to call a witness, whatever may be the relations betw͡ them, who is equally accessible, and equally und͡ legal control of either party, raises no presumr not a circumstance to be considered, against him.- *v. Rambo*, 20 Ala. 485; *Jackson v. The State*, 77 Ala *Carter v. Chambers*, 79 Ala. 223; *Pollak v. Harmon*, Ala. 420; *Bates v. Morris*, 101 Ala. 282; *Haynes v. Mc-Rae, Ib.* 318; *Crawford v. State*, 112 Ala. 1.

7. The eighth instruction, in form and structure, is argumentative, and for that reason, if it could be regarded as the statement of a correct principle or proposition of law, should have been refused. Such instructions, to say the least, trench upon the province of the jury, and have more or less tendency to mislead or confuse them. The giving of them, has not in our practice, been deemed a reversible error, if they embody a correct legal proposition, unless it be shown clearly that the jury has been misled. The instruction is, however, essentially erroneous. It may be possible to reconcile the evidence, upon a hypothesis consistent with honesty of intent, and yet, it may not be capable, or susceptible, the one or the other word is not material, of a fair, or just, or reasonable reconciliation upon that hypothesis. While fraud is not presumed—while courts do not strive to force conclusions of fraud—in civil cases, all that is essential, is that the evidence shall produce in the minds of the jury, a reasonable conviction of its existence. Similar instructions were condemned in *Pollak v. Searcy*, 84 Ala. 262; *Skipper v. Reeves*, 93 Ala. 332; *Smith v. Kaufman*, 94 Ala. 364, after full consideration, and we do not deem it necessary to indulge in mere repetition of what was said in those cases. The case of *Claflin v. Rodenbery*, 101 Ala. 213, approving an instruction, substantially, if not literally, the instruction before us, is, upon this point, overruled.

8. We are not prepared to say, there was such weight of testimony against the verdict, as required the court below to set it aside and grant a new trial.—*Cobb v. Malone*, 92 Ala. 630.

For the errors pointed out, the judgment is reversed and the cause remanded.

